**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Plaintiff–Appellant,**

v.

**OSMOSE WOOD PRESERVING, INC., a New York corporation, Defendant–Appellee.**

No. 89CA0939.

Colorado Court of Appeals, Div. II.

Jan. 17, 1991.

Rehearing Denied Feb. 14, 1991.

Certiorari Denied July 29, 1991.

McCotter, Sr. Vice–President and Gen. Counsel), Denver, for plaintiff-appellant.

Hall & Evans, Alan Epstein, Chris A. Mattison and Linda D. Zinser, Denver, for defendant-appellee.

Opinion by Judge DUBOFSKY.

In this action for indemnification, plaintiff, Public Service Company (PSC), appeals the judgment of the trial court in favor of Osmose Wood Preserving, Inc. (Osmose). We remand with directions.

PSC and Osmose entered into a contract whereby Osmose would inspect, maintain, and treat all of PSC's utility poles. The indemnity provision of the contract stated:

"To save and hold harmless the Company [PSC] against all liability from damage to property or injury or death of any person or persons arising out of, in any way connected with, or resulting from the work to be performed hereunder, including but not limited to, liability *arising out of, or in any way connected with, or resulting from the acts, negligence or alleged negligence of the Company [PSC], its agents or employees in connection with the work to be performed hereunder*; provided, however, that liability arising out of the sole and exclusive acts or negligence of the Company [PSC], its agents or employees shall be the responsibility of the Company [PSC]." (emphasis added)

Lawrence Rose, an employee of Montgomery Line Construction Company, was injured when the utility pole on which he was standing broke as he was removing television cable lines from it. The pole had been inspected and treated for decay the previous year by Osmose. Rose filed suit against PSC for negligence (*Rose* litigation). The jury awarded Rose damages for his personal injuries resulting from this accident after determining that PSC was 85 percent negligent and Rose was 15 percent negligent.

PSC notified Osmose 18 months prior to trial of its intent to be indemnified under the contract and two days after trial made a written demand for indemnity in the

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan and Brent L. Backes (James R.

amount of the judgment. PSC did not at any time attempt to implead Osmose in the *Rose* litigation nor did Osmose seek to intervene. Osmose did, however, assist PSC in defending the *Rose* litigation. After the jury verdict, PSC settled with Rose.

PSC brought an indemnity action to recover settlement costs, defense costs, and interest from the *Rose* litigation. As a basis for that indemnification, PSC alleges that its liability "arose out of, in connection with, and as a result of" Osmose's inspection and maintenance of its utility poles. PSC also alleges it was not solely negligent in causing Rose's injuries.

Without reviewing the record and transcript of the *Rose* litigation, the trial court determined that the absence of a special verdict form reflecting the basis of the jury's decision in that action precluded it from applying collateral estoppel in this indemnity action. Therefore, it concluded that a new trial was required to determine the fault of the parties. The trial court, in the indemnity action, concluded that the judgment in the *Rose* jury trial did not preclude it from determining in a new trial the comparative negligence of PSC, Rose, and Osmose. Accordingly, it conducted a trial and determined that Rose was the only negligent party in causing his injuries. That finding had the effect of barring PSC from obtaining indemnity from Osmose.

Relying primarily on the doctrine of collateral estoppel, PSC challenges the conclusion and procedure followed by the trial court. In support of the trial court, Osmose argues that collateral estoppel is inapplicable here and urges that Restatement (Second) of Judgments § 57 (1982) (Restatement § 57) provides the proper criteria to evaluate the effect of the *Rose* litigation on Osmose's claimed right to relitigate the fault of the parties in the indemnity lawsuit. In our view, the trial court erred in its narrow application of both the collateral estoppel doctrine and Restatement § 57.

## I.

### A.

■ The doctrine of collateral estoppel bars relitigation of an issue determined in a prior proceeding if: (1) the issue on which preclusion is asserted is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom preclusion is sought was a party to, or was in privity with, a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *United States v. Jesse*, 744 P.2d 491 (Colo.1987).

■ PSC argues that review of the record and transcript as well as other relevant evidence demonstrates that the basis for the jury's decision in the *Rose* litigation is identical to the issue asserted in the indemnity case. PSC further argues Osmose's responsibility for the broken pole was actually litigated vis-a-vis PSC, and was necessarily adjudicated in the prior proceeding. We agree with PSC that, before determining whether to hold a separate trial on the negligence of the parties, the trial court should first review the record and transcript of the *Rose* litigation in order to determine the most likely basis of the prior verdict.

■ If the trial court finds that Osmose's negligence was litigated and determined in the *Rose* case, it must then determine whether Osmose was "in privity" with PSC during the *Rose* litigation. Privity exists when there is a substantial identity of interests between a party and a non-party such that the non-party is "virtually represented" in litigation. *Aerojet–General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir.1980).

An indemnity agreement does not necessarily create privity. A working or functional relationship must exist in which the interests of the non-party are presented and protected by the party in the litigation. *Daigle v. Portsmouth*, 129 N.H. 561, 534 A.2d 689 (1987).

A functional relationship may be found if a non-party substantially participates in controlling the presentation of issues as if it were a party. *See* Restatement § 57. As stated in *Daigle v. Portsmouth, supra:*

"[A] finding of privity is simply a conclusion that something in the relationship of party and non-party justifies holding the latter to the result reached in litigation in which only the former is named."

Here, there is evidence that Osmose actively participated in PSC's defense of the *Rose* litigation. Thus, the court on remand should determine if privity existed between PSC and Osmose. If the issue of Osmose's negligence was litigated in the *Rose* case and if privity did exist between PSC and Osmose, then the court should next determine if Osmose was sufficiently involved in the *Rose* litigation so that it had a full and fair opportunity to litigate its negligence. If it finds this latter condition to exist, then collateral estoppel is applicable and judgment should be entered in PSC's favor.

### B.

If, however, the trial court on remand finds Osmose is not bound by the doctrine of collateral estoppel, then Restatement § 57 becomes pertinent.

Restatement § 57 provides:

"(1) Except as stated in Subsection (2), when one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification: (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and (b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee if: (i) the indemnitor defended the action against the indemnitee; or (ii) the indemnitee defended

the action with due diligence and reasonable prudence.

"(2) If there is a conflict of interest between the indemnitee and the indemnitor regarding the injured person's claim against the indemnitee, so *that the indemnitor could not properly have assumed the defense of the indemnitee,* a judgment for the injured person precludes the indemnitor only with respect to issues determined in that action as to which: (a) there was no conflict of interest between the indemnitee and the indemnitor; and (b) the indemnitee conducted a defense with due diligence and reasonable prudence.

"(3) A *'conflict of interest'* for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the scope of the indemnitor's obligation to indemnify and another of which is not." (emphasis added)

Here, the trial court did not analyze the estoppel or issue preclusion argument under Restatement § 57 before deciding the negligence of the parties in the indemnity case. However, Osmose, as indemnitor, was given reasonable notice of Rose's claim and, thus, on remand, if collateral estoppel is found inapplicable, then the court should determine if Osmose is bound by the results of the *Rose* trial by application of Restatement § 57.

In making that determination, the trial court should consider if PSC conducted the *Rose* defense with due diligence and reasonable prudence. If PSC meets this threshold requirement of Restatement § 57, then the trial court should determine if a conflict of interest existed for PSC in the initial *Rose* litigation.

Under Restatement § 57, estoppel or issue preclusion may exist against an indemnitor (Osmose) only for those issues determined in the prior action in which no conflict of interest existed between the indemnitee and the indemnitor. Osmose argues that there was a conflict of interest between itself and PSC and that, therefore, it was entitled to a separate trial on the fault

of the parties in the indemnity case. PSC maintains that the only real basis for a claim made in the *Rose* litigation resulted from Osmose's negligence, which in turn was imputed to PSC. Thus, these conflicting contentions will also need resolution by the trial court.

[5] The trial court should determine if Rose actively pursued an alternative theory of negligence against PSC which was outside the coverage of the indemnity agreement. If so, such a conflict of interest would invalidate the use of the prior judgment in the *Rose* litigation. *See Farm Bureau Mutual Automobile Insurance Co. v. Hammer,* 177 F.2d 793 (4th Cir. 1949); *Ferguson v. Birmingham Fire Insurance Co.,* 254 Or. 496, 460 P.2d 342 (1969).

[6] Finally, under Restatement § 57, the trial court must determine if the verdict "could be" based on grounds other than the negligent conduct of Osmose which was imputed to PSC. We conclude that the "could be" language of Restatement (Second) of Judgments § 57(3) (1982) requires that an alternative claim actually be tried and submitted to the jury for consideration.

If the trial court, in determining these issues under Restatement § 57, concludes that such provision precludes relitigation of the fault of Osmose, PSC, and Rose, then its judgment in this indemnity action must necessarily be reversed.

If the trial court determines that neither the doctrine of collateral estoppel nor Restatement § 57 is applicable to preclude Osmose's right to a separate hearing, then the determination reached in the indemnity action should be affirmed.

## II.

PSC argues that this court should review the record and transcript from both the *Rose* and indemnity trials and determine, as a matter of law, that estoppel exists against Osmose. In our view, this is a matter to be determined by the trial court under the guidelines set out above. Moreover, we do not agree that the record from the indemnity trial compels a conclusion that, as a matter of law, it was Osmose's negligence which caused the accident. Our review of the record and transcript indicates there is a sufficient evidentiary basis to support the trial court's decision in the indemnity case as well as the jury verdict in the initial *Rose* litigation.

[7] We note that, if both the results from the *Rose* and indemnity trials are upheld, there will exist the logically inconsistent result that PSC will have been found to be 85 percent negligent for the injuries caused to Rose in the *Rose* litigation, and yet will have been determined to be entirely free from fault in the indemnity trial. Although such inconsistent verdicts in civil cases are not necessarily desirable, they are legally permissible. *Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 (1933); A. Bickel, *Judge and Jury—Inconsistent Verdicts in the Federal Courts,* 63 Harv. L.Rev. 649 (1950).

## III.

[8] PSC also argues that, in resolving the collateral estoppel issue, the trial court erred in not permitting Rose's attorney to testify as to the basis upon which the *Rose* case was tried. We agree that the evidence was relevant and that the trial court erred in excluding it. *See Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187 (Colo.App. 1984).

The cause is remanded for further proceedings in accordance with the views expressed herein.

STERNBERG, C.J., and SMITH, J., concur.