2017 CO 39

**Scott E. FOSTER, Petitioner,**

v.

**John E. PLOCK, Respondent.**

**Supreme Court Case No. 16SC366**

Supreme Court of Colorado.

May 15, 2017

Rehearing Denied June 5, 2017

Attorneys for Petitioner: The Law Office of Michael L. Glaser, LLC, Michael L. Glaser, Denver, Colorado

Attorneys for Respondent: Montgomery Amatuzio Dusbabek Chase, LLP, Peter S. Dusbabek, Sara K. Stieben, Fort Collins, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 This case requires us to determine whether mutuality is a necessary element of defensive claim preclusion.[1] Multiple divisions of the court of appeals have concluded that mutuality need not be established for the defensive use of claim preclusion, but we disagree. Instead, we conclude that mutuality is a necessary element of defensive claim preclusion. We also conclude that mutuality existed in this case, as did the remaining elements of claim preclusion, and we therefore affirm the judgment of the court of appeals on other grounds.

## I. Facts and Procedural History

¶2 In 2011, Petitioner Scott Foster's former wife, Bronwen Foster ("Wife"), filed for dissolution of marriage and hired attorney John Plock to represent her. As part of the dissolution proceedings, the trial court ordered a parental responsibilities evaluation ("PRE") pursuant to section 14-10-127, C.R.S. (2016). The PRE was performed by Dr. Andrew Loizeaux. A second PRE was subsequently conducted by Dr. Edward Budd. Neither evaluation was favorable to Foster. The PREs were confidential and were not to be "made available for public inspection" without an order of the court. See § 14-10-127(8).

¶3 As part of the dissolution of marriage proceedings, the trial court entered a civil protection order barring Foster from contacting Wife. Foster violated the protection order multiple times, resulting in two misdemeanor criminal cases. In one of the cases ("the criminal case")—after Foster was found guilty of violating the protection order, but before his sentencing—Plock provided the Deputy District Attorney prosecuting ·the case with copies of the PREs from the dissolution of marriage proceeding. The Deputy District Attorney filed the PREs with the criminal court for use in sentencing. The court held the sentencing hearing in September 2013 and, on Foster's motion, orally ordered the PREs sealed.

¶4 Plock· then filed a motion in the dissolution proceedings, admitting that he had disclosed the PREs to the Deputy District Attorney. The court sanctioned Plock for violating section 14-10-127(8) and ordered him to pay Foster's attorneys' fees associated with responding to Plock's motion in which he admitted disclosing the PREs.

¶5 While the dissolution of marriage proceeding and the criminal cases were pending, Foster filed eleven separate lawsuits against those involved in the PRE process conducted by Dr. Loizeaux. Defendants included both individuals who prepared the PREs and witnesses who provided information to them. Wife was named as a defendant, but Plock was not. The lawsuits alleged various claims, including defamation and outrageous conduct. The eleven cases were consolidated into one case ("the consolidated civil case"). The defendants each moved to dismiss the case under C.R.C.P. 12(b)(5).

¶6 Foster subsequently amended his complaints. As significant here, Plock was not named as a defendant in any of those amended complaints, but Wife was. In Foster's amended complaint against Wife, he alleged among other things that she, through her attorney, caused both of the PREs to be disclosed in the criminal case.[2] Foster's claims against Wife included defamation in the form of libel, slander, and outrageous acts, and he sought both economic damages and injunctive relief. Plock's disclosure of the PREs to the Deputy District Attorney formed the basis for one or more of these claims against Wife.

¶7 The defendants, including Wife, subsequently filed renewed motions to dismiss, which the trial court granted. The court concluded that: (1) the witnesses who made the allegedly defamatory statements had absolute immunity from a defamation action be-

---

1. We granted certiorari to review the following issues:
 1. Whether the court of appeals erred in ruling that the mutuality requirement of claim preclusion has been abolished under Colorado law.

2. Whether the court of appeals erred in finding that petitioner's claim was precluded under the doctrine of claim preclusion.

2. Though Plock was not named, he was served with a copy of the amended complaint.

cause their statements were essential to the judicial decision-making process; (2) the PREs were largely based on the evaluators' observations, not the statements provided by the witnesses, and thus the defamation claims were without merit; (3) the statements made to Dr. Loizeaux and contained in his PRE did not rise to the level of outrageous conduct; and (4) the statements made in the PRE did not injure Foster or result in damages that would support his claims.

¶8 Four months later, Foster filed this action against Plock, alleging that in disclosing the PREs in the criminal case, Plock committed the torts of invasion of privacy, defamation, and outrageous conduct. Plock filed a motion to dismiss, arguing that both claim preclusion and issue preclusion barred Foster's lawsuit because of the judgment of dismissal in the consolidated civil case. The court granted the motion, concluding that Foster's action was barred by both claim preclusion and issue preclusion.

¶9 Foster appealed. As relevant here, Foster argued that the mutuality element of claim preclusion was not met because Plock was not a named party or in privity with any party in the consolidated civil case. The court of appeals rejected this argument, concluding instead that mutuality was not required. Foster v. Plock, 2016 COA 41, ¶ 48, —— P.3d ——. Specifically, the court of appeals stated that it could "perceive no reason why a party defensively asserting claim preclusion must have been a party to the prior action when the party against whom he or she is asserting the doctrine is bound by the prior judgment." Id. at ¶ 55. It also concluded that the remaining elements of claim preclusion were met. Id. at ¶¶ 33, 35, 47. Because the court of appeals determined that Foster's claims were barred by claim preclusion, it did not consider his arguments relating to issue preclusion. Id. at ¶ 27. We granted certiorari.

## II. Standard of Review

██ ¶10 We review de novo a judgment entered on the basis of claim preclusion. See

Loveland Essential Grp., LLC v. Grommon Farms, Inc., 2012 COA 22, ¶ 13, 318 P.3d 6, 10.

## III. Analysis

¶11 We begin with an overview of the doctrines of claim preclusion and issue preclusion. We then consider whether mutuality is a required element of claim preclusion. To address this, we first discuss how confusion surrounding the term "res judicata" led various divisions of the court of appeals to erroneously conclude that mutuality has been eliminated in Colorado as a required element of defensive claim preclusion. Second, we consider whether other jurisdictions have allowed for non-mutual claim preclusion and determine that none have gone so far as to broadly eliminate the requirement of mutuality. We then conclude that mutuality is a required element of claim preclusion in Colorado.[3] We next determine that the mutuality element is met in this case because the relevant parties were in privity. Finally, we conclude that the remaining elements of claim preclusion were also met and that Foster's claims were thus properly barred under claim preclusion.

## A. Claim Preclusion and Issue Preclusion Broadly

██ ¶12 In the broadest sense, claim preclusion prevents the perpetual re-litigation of the same claim or cause of action. The goal of the doctrine is to promote judicial economy by barring a claim litigated in a prior proceeding from being litigated again in a second proceeding. See Cruz v. Benine, 984 P.2d 1173, 1176 (Colo.1999). As a matter of policy, the doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Salida Sch. Dist. R-32-J v. Morrison, 732 P.2d 1160, 1163 (Colo.1987).

---

3. As discussed in subsection C below, the question remains whether a defendant may *ever* invoke claim preclusion despite the lack of mutuality. In other words, we have not opined on whether either of the two exceptions to the mutuality requirement found in other jurisdictions

(also discussed in subsection C) applies in Colorado. But we need not answer this question today because as discussed in subsection D, Plock, the defendant in the second action, was in privity with Wife, a defendant in the first action.

We have previously stated that claim preclusion bars a claim in a current proceeding if four elements are met: (1) "the judgment in the prior proceeding was final"; (2) "the prior and current proceeding involved identical subject matter"; (3) "the prior and current proceeding involved identical claims for relief"; and (4) "the parties to both proceedings were identical or in privity with one another." Meridian Serv. Metro. Dist. v. Ground Water Comm'n, 2015 CO 64, ¶ 36, 361 P.3d 392, 398; accord Cruz, 984 P.2d at 1176. The fourth element is often referred to as the mutuality requirement.

■ ¶13 Issue preclusion, on the other hand, prevents the re-litigation of discrete issues, rather than causes of action. Under this doctrine, once a particular issue is finally determined in one proceeding, parties to this proceeding are barred from re-litigating that particular issue again in a second proceeding, even when the actual claims for relief in the two proceedings are different. See Stephen A. Hess, Issue preclusion, 1B Colo. Prac., Methods of Practice § 25:3 (6th ed. 2017). We have explained that the doctrine of issue preclusion is broader than the doctrine of claim preclusion because it applies to claims for relief different from those litigated in the first action, but narrower in that it applies only to issues actually litigated. S.O.V. v. People in ex rel. M.C., 914 P.2d 355, 359 (Colo.1996). We have previously determined that issue preclusion prohibits litigation of the issue in the second proceeding if four elements are met: (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding. See Wolfe v. Sedalia Water & Sanitation Dist., 2015 CO 8, ¶ 16, 343 P.3d 16, 22.

## B. Confusion Regarding Res Judicata

¶14 Claim preclusion is often referred to as res judicata. See Farmers High Line Canal & Reservoir Co. v. City of Golden, 975 P.2d 189, 196 n.11 (Colo.1999). However, the term res judicata has been a source of confusion. Historically, res judicata was used as a general umbrella term referring to all of the ways in which one judgment could have a binding effect on another. See Charles Alan Wright, The Law of Federal Courts § 100A, at 722–23 (5th ed. 1994). However, courts and commentators increasingly began to use the more precise terms "claim preclusion" and "issue preclusion" at the urging of legal scholar Allan Vestal, who saw each as a distinct doctrine deserving more accurate descriptive terminology.[4] See Allan Vestal, Rationale of Preclusion, 9 St. Louis U.L.J. 29, 29–30 (1964). Even though the more precise terms were developed and gained widespread traction, courts have not used them consistently, and the phrase res judicata in particular was a source of confusion because it was "commonly used as an overarching label for both claim and issue preclusion." Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo.2005).

■ ¶15 The confusion resulting from the umbrella term "res judicata" in Colorado specifically can be traced to the oft-cited California Supreme Court case Bernhard v. Bank of America Nat'l Trust & Savings Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942). There, in a short and straightforward decision, the court abandoned one of the traditional elements of "res judicata"—mutuality. Because this case was decided prior to the movement toward the more specific terms "claim preclusion" and "issue preclusion," the court used the broad umbrella term "res judicata." However, conceptually, as addressed below, the case concerned what is now referred to as issue preclusion. Explaining its abandonment of mutuality as a required element of "res judicata" (i.e., issue preclusion), the court stated:

> The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted.... There is no compelling reason ... for requiring that the party assert-

4. The term "issue preclusion" is also referred to as "collateral estoppel."

ing the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend.

Id. at 894–95. Having thus abandoned mutuality, the court concluded that only three questions must be answered in determining if res judicata applied: "Was the issue decided in the prior adjudication identical with the one presented in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Id. at 895 (emphasis added). Though the court used the term res judicata, these are the elements (excepting mutuality, which the court here eliminated as an element) for what is now called defensive issue preclusion.[5] See Wolfe, ¶ 16, 343 P.3d at 22 (outlining the elements of issue preclusion). Thus, although "res judicata" is now used as a synonym for claim preclusion, Bernhard has been universally understood and applied as a case implicating only issue preclusion. See Charles Alan Wright & Arthur R. Miller, Mutuality Abandoned—Issue Preclusion, 18A Fed. Prac. & Proc. Juris. § 4464 (2d ed. 2017); see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (citing Bernhard favorably in retreating from the mutuality requirement for issue preclusion in patent cases). Many state and federal courts have followed Bernhard in abandoning the requirement of mutuality in defensive issue preclusion cases. Blonder-Tongue, 402 U.S. at 324, 91 S.Ct. 1434 (discussing the impact of Bernhard on state and federal courts and the trend to abandon mutuality in defensive issue preclusion cases); see also, e.g., Miller v. Nichols, 586 F.3d 53, 60 (1st Cir.2009)

(applying Maine law); Lane v. Peterson, 899 F.2d 737, 741 (8th Cir.1990); Tole S.A. v. Miller, 530 F.Supp. 999, 1003 (S.D.N.Y.1981), aff'd sub nom. Tole S.A. & Compania Anomina De Inversiones Venam v. Miller, 697 F.2d 298 (2d Cir.1982); Fisher v. Jones, 311 Ark. 450, 844 S.W.2d 954, 958 (1993); Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc., 336 N.W.2d 153, 159 (S.D.1983).

¶16 But in Murphy v. Northern Colo. Grain Co., 30 Colo.App. 21, 488 P.2d 103, 104 (1971), a division of our court of appeals interpreted Bernhard as eliminating the mutuality requirement for defensive claim preclusion, and it cited Bernhard as its justification for eliminating the mutuality requirement for defensive claim preclusion in Colorado. Then, two other divisions relied on Murphy to also conclude that mutuality is not required for the defensive use of claim preclusion. See McGary v. Rocky Ford Nat'l Bank, 523 P.2d 479, 480–81 (Colo.App.1974); Shaoul v. Goodyear Tire & Rubber, Inc., 815 P.2d 953, 954–55 (Colo. App.1990). Thus, the apparent "abandonment of mutuality" in defensive claim preclusion cases stemmed from confusion of the use of the term "res judicata" in Bernhard. These cases mistakenly understood the term to reference claim preclusion, when instead, the term was used in Bernhard to refer to issue preclusion.

¶17 In the instant case, the court of appeals division cited to Bernhard, Murphy, McGary, and Shaoul to reiterate the rule first introduced in Murphy: that mutuality has been eliminated for the defensive use of claim preclusion in Colorado. Foster, ¶¶ 49–51. In so doing, the division also interpreted Bernhard as a claim preclusion case. Id. at ¶ 55. Therefore, like the other divisions before it, the division in this case significantly based its holding on a misreading of the Bernhard decision. Ultimately, because Bernhard did not eliminate the mutuality re-

---

**5.** Both claim and issue preclusion can be invoked defensively or offensively. Invoked defensively, a defendant seeks to preclude a plaintiff from re-litigating a claim or issue for which the plaintiff previously litigated and lost against a different defendant. See 47 Am. Jur. 2d Judgments § 572. Used offensively, a plaintiff seeks to

preclude a defendant from defending against a claim or issue which the defendant previously litigated and lost against a different plaintiff. See 47 Am. Jur. 2d Judgments § 571. Defensive issue preclusion was at issue in Bernhard, and as such, Bernhard stands only for the elimination of mutuality in defensive issue preclusion cases.

quirement for defensive claim preclusion, the foundation of all four court of appeals cases collapses. Because of this, these cases cannot be used as a basis to conclude that mutuality is an unnecessary element of defensive claim preclusion. Moreover, this court has continued to cite mutuality as a required element of claim preclusion numerous times after the publications of Murphy, McGary, and Shaoul. See, e.g., Meridian Serv. Metro. Dist., ¶ 36, 361 P.3d at 398; Wolfe, ¶ 15, 343 P.3d at 22; Cruz, 984 P.2d at 1176. Thus, mutuality in defensive claim preclusion cases has not been abandoned in Colorado. With this understanding in mind, we now consider whether mutuality is required in claim preclusion cases.

## C. The Mutuality Requirement

¶18 Traditionally, the mutuality requirement has been a touchstone of both claim and issue preclusion. As discussed above, a significant number of state and federal jurisdictions have allowed for the general elimination of mutuality in the case of defensive issue preclusion. But the same cannot be said for claim preclusion. Though some state and federal jurisdictions have relaxed the requirement of mutuality in claim preclusion cases, they have done so only in narrow circumstances. Specifically, true non-mutual claim preclusion has been permitted only where: (1) indemnity relationships are implicated or (2) where the defendant in the second action can demonstrate that he or she should have been included as a party in the first action, and the plaintiff cannot show a good reason for not having included the defendant.

¶19 Turning first to indemnity, indemnification relationships have long triggered an exception to the mutuality requirement in both issue and claim preclusion cases. Often dubbed the "narrow exception," this exception "makes the benefits of preclusion available to anyone who, if defeated in the second action, would be entitled to demand indemnification from the party who won the first action." Charles Alan Wright & Arthur R. Miller, Traditional Mutuality Requirement and Exceptions, 18A Fed. Prac. & Proc. Juris. § 4463 (2d ed. 2017).

¶20 A few courts have adopted an additional exception to the requirement of mutuality, but they have only done so where (1) the defendant in the second action was not a party or in privity with the defendant in the first action; (2) the defendant in the second action can demonstrate that he or she should have been included as a party in the first action; and (3) the plaintiff cannot show a good reason for not having included the defendant. See, e.g., Weddell v. Sharp, —— Nev. ——, 350 P.3d 80, 81 (2015); Gambocz v. Yelencsics, 468 F.2d 837, 842 (3d Cir. 1972). However, beyond these circumstances "nonmutual claim preclusion continues to be denied in decisions that probably reflect a general assumption that it is not ordinarily available." Wright & Miller, § 4464.1.

¶21 More recently, courts have allowed for what also has been deemed "non-mutual claim preclusion" in the context of vicarious liability relationships as well. However, these courts have not actually eliminated mutuality as a requirement for asserting claim preclusion in vicarious liability cases writ large; instead, they have simply extended the doctrine of privity (a way to satisfy the mutuality requirement) to include employee-employer, principal-agent, or indemnitor-indemnitee relationships. See Glenn S. Koppel, The Case for Nonmutual Privity in Vicarious Liability Relationships: Pushing the Frontiers of the Law of Claim Preclusion, 39 Campbell L. Rev. 1, 15–49 (2017) (providing a comprehensive survey of the jurisdictions, both federal and state, that have allowed for "non-mutual claim preclusion" in vicarious liability situations); see, e.g., 18 James Wm. Moore et. al., Moore's Federal Practice § 131.40[3][f] (3d ed. 2015) ("Generally, an employer-employee or agent-principal relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued."); Jackson v. Dow Chem. Co., 902 F.Supp.2d 658, 671 (E.D.Pa.2012) (holding that the concept of privity, traditionally "limited to a set of substantive legal relationships," has been "pragmatically expanded" to apply claim preclusion "whenever there is a close or significant relationship between successive defendants," and a vicarious liability

relationship between employer and employee acting within the scope of his employment is one of those close or significant relationships sufficient to establish privity for purposes of claim preclusion (citations omitted)).

¶22 We are unaware of any jurisdictions that have entirely eliminated the requirement of mutuality for the defensive use of claim preclusion in all circumstances. Thus, the court of appeals' conclusions in Murphy, McGary, Shaoul, and Plock are outliers. No argument has been presented, nor have we come across any arguments, that justify eliminating mutuality in all defensive claim preclusion cases. Therefore, to the extent that Murphy, McGary, Shaoul, and Plock held that mutuality has been abandoned in Colorado as a required element of defensive claim preclusion in all cases, they are overruled. Instead, we hold that mutuality is a required element of defensive claim preclusion.[6]

#### D. Mutuality in This Case

 ¶23 As discussed, the mutuality element of claim preclusion requires "identity or privity between parties to the actions." Cruz, 984 P.2d at 1176. In this case, there was no identity because Plock was not a defendant in the first action. However, because Plock was in privity with Wife, who was a defendant in the first action, the mutuality requirement of claim preclusion is met.

 ¶24 The concept of "privity" embodies broad equitable principles, and it has been said that "[a] finding of privity is simply a conclusion that something in the relationship of party and non-party justifies holding the latter to the result reached in litigation in which only the former is named." Pub. Serv. Co. of Colo. v. Osmose Wood Preserving, Inc., 813 P.2d 785, 788 (Colo.App.1991) (quoting Daigle v. City of Portsmouth, 129 N.H. 561, 534 A.2d 689 (1987)). Specifically, the question of when a second party is "in privity" with a prior party requires (1) a comparison of the legal interests of each party and (2) an understanding of whether the second party's legal interests were protected by the prior party. We have articulated this privity

test in a broader sense and have concluded that "[p]rivity between a party and a nonparty requires both a 'substantial identity of interests' and a 'working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation.'" S.O.V., 914 P.2d at 360 (quoting Public Serv. Co., 813 P.2d at 787).

¶25 Here, turning to the first step of the privity test, Wife's and Plock's legal interests were aligned because both parties had an interest in a judgment that concluded that the PREs did not injure Foster or result in damages that would support his claims against Wife and Plock, respectively. As to the second step, Plock's interests were adequately protected by Wife. One or more of Foster's claims against Wife were premised on Plock's actions, i.e., his disclosure of the PRE reports to the prosecutor in the criminal case. Thus, in defending against Foster's claims, Wife's defense inevitably paralleled a defense that Plock would have made had he been named in the first action. As a result, Plock's interests were protected. Because both elements of the privity test were met in this case, we conclude that Plock and Wife were in privity, meaning the mutuality element of claim preclusion is satisfied.

#### E. The Remaining Elements of Claim Preclusion in This Case

 ¶26 As discussed, claim preclusion requires that a defendant in the second case must show: (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions. Cruz, 984 P.2d at 1176. Having determined that the fourth element is met, we now address the remaining elements in turn.

¶27 The first element is easily established, as there is no dispute that the first proceeding (the consolidated civil case) resulted in a final judgment.

 ¶28 The second element, identity of subject matter, is also satisfied. Numerous

**6.** This case only concerns the defensive use of claim preclusion. Therefore, we need not consider today whether mutuality is required for the

offensive use of claim preclusion. See also supra note 3.

cases list this as a separate element of claim preclusion, but few cases discuss it in any depth. We did, however, consider this issue briefly in <u>Argus</u> and concluded that where the litigation involved the same parcel of real property and the same agreements concerning the property, identity of subject matter was established. 109 P.3d at 609. Relatedly, we have held that "[t]he best and most accurate test as to whether a former judgment is a bar in subsequent proceedings ... is whether the same evidence would sustain both, and if it would the two actions are the same, and this is true, although the two actions are different in form." <u>Farmers High Line Canal</u>, 975 P.2d at 203 (quoting <u>Pomponio v. Larsen</u>, 80 Colo. 318, 251 P. 534, 536 (1926)). Thus, identity of subject matter can be evaluated by determining whether the same evidence would be used to prove the claims, even if the actions are different. <u>See</u> <u>Argus</u>, 109 P.3d at 608–09 (holding that same parcel of land and same agreement as the prior litigation sufficient for identity of subject matter); <u>City & Cnty. of Denver v. Block 173 Assocs.</u>, 814 P.2d 824, 831 (Colo.1991) (holding that same land transaction and same underlying facts generate identity of subject matter). In this case, Foster's claims against both Wife and Plock turned on the same evidence—the content and disclosure of the same PREs—and involved the same timeline. Therefore, we conclude that there was identity of subject matter between this case and the prior action.

¶29 The third element, identity of claims, is also satisfied. This element requires us to determine whether the claim at issue in the second proceeding is the same claim that was (or could have been) brought in the first proceeding. We disregard the form of the action and instead look at the actual injury underlying the first proceeding. <u>See</u> <u>Meridian Serv. Metro. Dist.</u>, ¶ 38, 361 P.3d at 398 (holding that "[t]he identity of claims element 'is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies'" (quoting <u>Farmers High Line Canal</u>, 975 P.2d at 199)). Claims are tied by the same injury where they concern "all or any part of the transaction, or series of connected transactions, out of which the

[original] action arose." <u>Argus</u>, 109 P.3d at 609. In determining whether claims concern the same transaction, the court must consider whether the underlying facts "are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." <u>Salazar v. State Farm Mut. Auto. Ins. Co.</u>, 148 P.3d 278, 281 (Colo. App.2006) (quoting <u>Porn v. Nat'l Grange Mut. Ins. Co.</u>, 93 F.3d 31, 34 (1st Cir.1996) (quoting Restatement (Second) of Judgments § 24 (Am. Law Inst. 1982))). Claims arise out of the same transaction when they "seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis." <u>Loveland Essential Grp.</u>, ¶ 56, 318 P.3d at 19.

¶30 Here, Foster's claims in the first action and the second action attempted to redress the same basic wrong and rested on similar facts. Specifically, both actions surrounded the alleged harm to Foster arising from the disclosure of the PREs to the prosecutor in the criminal case and were thus the "same claim" for the purposes of claim preclusion. We recognize that in the first action, Foster did not allege a claim of relief for invasion of privacy, but did so in the second action. However, it is the injury underlying the claims rather than the legal theories asserted that is relevant to the inquiry. <u>See</u> <u>Meridian Serv. Metro. Dist.</u>, ¶ 38, 361 P.3d at 398. Thus, here, the third element of claim preclusion is satisfied because the claim at issue in the second proceeding is the same claim brought in the first proceeding.

¶31 We therefore conclude that all elements of claim preclusion are satisfied and that Foster's claims in this action are thus barred by claim preclusion.

## IV. Conclusion

¶32 We hold that mutuality must be established for a party to benefit from claim preclusion. We also conclude that all of the elements of claim preclusion, including mutuality, are established in this case, meaning Foster's claim was properly precluded under the doctrine of claim preclusion. We there-

fore affirm the judgment of the court of appeals on other grounds.