**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

J. G., a minor, through her father and
Conservator, Mark Grimes,

     Plaintiff - Appellant,

v.

KIM BIMESTEFER, in her official
capacity as Executive Director of the
Colorado Department of Health Care
Policy and Financing; CHRISTINE
NIERENZ, in her official capacity as
Administrative Law Judge II for the
Colorado Office of Appeals of the
Colorado Department of Health Care
Policy and Financing,

     Defendants - Appellees.

------------------------------

COLORADO CENTER ON LAW AND
POVERTY, INC.; COLORADO LEGAL
SERVICES; JUSTICE IN AGING;
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE; NATIONAL
HEALTH LAW PROGRAM,

     Amici Curiae.

No. 21-1194
(D.C. No. 1:19-CV-02674-WJM-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **PHILLIPS**, **MORITZ**, and **EID**, Circuit Judges.
_____

Appellant J.G., through her father and conservator, Mark Grimes, appeals the district court orders dismissing her claims, denying her motion for reconsideration, and denying her motion to amend her complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.     Factual Background[1]

J.G. was born in December 2005. In January 2007, she suffered an adverse reaction to a measles-mumps-rubella-varicella vaccine. That unfortunately led to serious health consequences.

Through her mother and then-conservator, J.G. petitioned for compensation in the Court of Federal Claims under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa-15 *et seq.*[2] While her petition was pending, J.G. applied for and was

---

[1] The contents of this section are taken from J.G.'s complaint. We disregard all legal conclusions and irrelevant allegations. *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). But we accept as true all relevant, well-pleaded facts and view them in the light most favorable to the plaintiff. *Id.*

[2] The Vaccine Act "establishes a no-fault compensation program" that compensates individuals who are injured by vaccines. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 228 (2011). Under the program:

> A person injured by a vaccine, or his legal guardian, may file a petition for compensation in the United States Court of Federal Claims, naming the Secretary of Health and Human Services as the respondent. A special master then makes an informal adjudication of the petition . . . . The Court of Federal Claims must review objections to the special master's decision and enter final judgment . . . . At that point, a claimant has two options:

2

approved to receive benefits under Colorado's Medicaid program. That included Home and Community Based Children's Extensive Support Waiver services, which are offered to children with developmental delays or disabilities. In Colorado, Medicaid is administered by the Colorado Department of Health Care Policy & Financing ("Department").

In 2011, while J.G. was receiving Medicaid benefits, a special master in the Court of Federal Claims approved a settlement between J.G. and the Department of Health and Human Services ("DHHS"). The settlement included compensation for several categories of damages, including (1) a lump-sum payment into a reversionary trust that DHHS created, Regions Bank managed as trustee, and J.G. could access for only therapy expenses, and (2) a lump-sum payment to purchase an annuity, providing J.G. annual payments during her life. A Colorado state court also approved the settlement terms.

For roughly five years, the Department expressed no concerns with J.G.'s settlement. That changed in April 2016, when the Department began questioning the settlement's terms. J.G.'s representatives tried addressing the Department's concerns but to no avail. In 2017, J.G. was notified that her Medicaid benefits were being terminated. The notice stated that the reversionary trust was a countable resource that placed J.G.

---

to accept the court's judgment and forgo a traditional tort suit for damages, or to reject the judgment and seek tort relief from the vaccine manufacturer.

*Id.*

3

above the allowable-resource limit to qualify for Medicaid assistance. It also said that money received under the annuity contract put J.G. over the allowable income limit.

J.G. appealed that decision to the Office for Administrative Courts. The appeal was assigned to Administrative Law Judge Tanya Light. During those proceedings, the parties agreed that the case could be decided on summary-judgment briefing, without a hearing. So they submitted their briefs and supporting exhibits, some of which were stipulated. After considering the arguments, ALJ Light issued an "Initial Decision" that reversed the Department's ineligibility ruling, concluding that neither the reversionary trust nor the annuity were countable assets for determining J.G.'s Medicaid eligibility.

The Department objected to the Initial Decision, and J.G. filed a response to those objections. The matter was reviewed by Appellee Christine Nierenz, an ALJ in the Department's Office of Appeals. In July 2019, she issued a Final Agency Decision ("Final Decision") that reversed the Initial Decision. ALJ Nierenz concluded that the reversionary trust and the annuity were countable assets after all, making J.G. ineligible for Medicaid assistance.

## II.    Procedural Background

The Final Decision stated that J.G. could seek judicial review of the decision by suing in the appropriate state district court within 35 days. But J.G. didn't pursue that option; she instead turned to federal court and filed a complaint in the District of

4

Colorado. She asserted five claims under 42 U.S.C. § 1983 against ALJ Nierenz and Kim

Bimestefer in their official capacities as members of the Office of Appeals.[3]

In Count I, J.G. alleges that ALJ Nierenz violated 42 U.S.C.

§ 1396a(a)(10)(A)(ii)(V)–(VI) by not evaluating her Medicaid eligibility "in accordance

with the regulations and law as set forth in the [Supplemental Security Income]

program."[4] R. Vol. 1 at 109. According to J.G., had ALJ Nierenz correctly relied on the

Supplemental Security Income eligibility standards, she would have concluded that

neither the reversionary trust nor the annuity was countable income to J.G.

In Count II, J.G. alleges that the reversionary trust isn't a countable asset under 42

U.S.C. § 1396p(h)(1) or an available asset to her under 42 U.S.C. § 1396a(a)(17). She

alleges that by interpreting the reversionary trust otherwise, the Department violated §

1396p(h)(1). She asks the district court to declare the trust a non-countable and

unavailable asset to her, "as more fully set forth in the opinion of [] ALJ [Light] in the

Initial Decision." R. Vol. 1 at 118.

In Count III, J.G. alleges that the Department erred in concluding that the annuity

was a countable resource under 42 U.S.C. § 1396p. She says that because her annuity is

---

[3] Bimestefer is the Department's Executive Director.

[4] Supplemental Security Income is a federal program that is "designed to help aged, blind, and disabled people[] who have little or no income" by providing them money for basic needs. *Supplemental Security Income Home Page — 2014 Edition*, U.S. SOC. SECURITY ADMIN., http://www.ssa.gov/ssi/ (last visited Sept. 26, 2014).

assigned to a disability trust, it's neither a countable resource nor her personal income. She asks the district court to declare the same.

Count IV alleges a claim for "Equitable Estoppel and Waiver," but J.G. has abandoned that claim, and it is not at issue on appeal.

In Count V, J.G. alleges that the Department violated 42 U.S.C. § 1396a(r)(2)(A) by "counting income and resources for [her] in a manner that is more restrictive than the [Supplemental Security Income] program." R. Vol. 1 at 124. J.G. says that "[t]he decision of [] ALJ [Light] in this case is correct under federal law," while "[t]he decision of [ALJ] Nierenz is incorrect under federal law." *Id.* at 125.

ALJ Nierenz and Director Bimestefer moved to dismiss the complaint, arguing that J.G.'s claims were barred by issue and claim preclusion. They also argued that J.G. lacked any enforceable federal rights under the Medicaid statutes. The district court granted their motion on claim-preclusion grounds, concluding that the Final Decision was entitled to preclusive effect and that each of J.G.'s claims either had been raised or could have been raised during the administrative proceedings. The court then entered a final judgment.

J.G. later moved for reconsideration and to amend her complaint. Both motions were denied. This appeal followed.

**DISCUSSION**

**I.    Order Granting Motion to Dismiss**

We review de novo the grant of a motion to dismiss on claim preclusion grounds. *Johnson v. Spencer*, 950 F.3d 680, 704 (10th Cir. 2020).

6

### a. Whether the Final Decision Can Have Preclusive Effect

We must first decide whether the Final Decision *can* have preclusive effect. We conclude that it can.

Federal courts must give full faith and credit to state-court judgments. 28 U.S.C. § 1738. This principle can also extend to state administrative actions. When an agency (1) acts in a judicial capacity, (2) resolves disputed issues of fact before it, and (3) the parties have an adequate opportunity to litigate issues, the agency's decision has the same preclusive effect it would have in state court. *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004). An agency acts in a judicial capacity "[w]hen the decision is likely to affect the rights and duties of specific individuals and is reached through the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing." *Chellsen v. Pena*, 857 P.2d 472, 475 (Colo. App. 1992).

The above elements are satisfied here. First, both ALJs Light and Nierenz acted in a judicial capacity. They relied on Colorado and Tenth Circuit caselaw in evaluating J.G.'s Medicaid eligibility. It doesn't matter that no hearing occurred, because "[t]he parties agreed that the case could be decided on summary judgment, and requested [that] the Court vacate the scheduled hearing and set a briefing schedule." R. Vol. 1 at 43. Second, the administrative proceedings resolved disputed issues of fact. The parties filed exhibits in support of their summary-judgment briefs, which formed the basis of many of ALJ Light's extensive factual findings. In fashioning her Final Decision, ALJ Nierenz was bound by those findings unless they were "contrary to the weight of the evidence." *Id.* at 65. Third, J.G. had a full and adequate opportunity to litigate whether the

7

reversionary trust and the annuity rendered her ineligible for Medicaid—indeed, her arguments persuaded ALJ Light to reverse the Department's initial termination decision.

We thus conclude that the Final Decision can have preclusive effect in this case.

**b.       Whether the Final Decision Precludes J.G.'s Federal Lawsuit**

Having determined that the Final Decision *can* have preclusive effect, we must now determine whether it *does* preclude J.G.'s lawsuit here. We conclude that it does.

We noted above that "[f]ederal courts give state agency determinations the same preclusive effect that the forum state's courts would afford them." *Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012). Here, the parties agree that if claim preclusion applies, we should assess it under Colorado law.

Claim preclusion bars re-litigation of matters that were decided or could have been raised in a prior proceeding. *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005). The doctrine saves parties from multiple lawsuits, conserves judicial resources, and promotes reliance on the judicial system by preventing inconsistent decisions. *See id.* In Colorado, claim preclusion applies when: "(1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and (4) the parties to the proceedings were identical or in privity with one another." *Gale v. City and Cnty. of Denver*, 500 P.3d 351, 354 (Colo. 2020) (citation omitted).

J.G. doesn't contest whether the first, second, and fourth elements are satisfied. She doesn't meaningfully discuss them in her briefing, and during oral

8

argument, she confirmed that she was challenging only the third element—namely, the identity-of-claims element.[5] So we limit our analysis to that element.

"Identity of claims exists when 'the claim at issue in the second proceeding is the same claim that was (or could have been) brought in the first proceeding.'" *Gale v. City and Cnty. of Denver*, 923 F.3d 1254, 1256 (10th Cir. 2019) (quoting *Foster v. Plock*, 394 P.3d 1119, 1127 (Colo. 2017)). One principle is critical here: "the inquiry does not focus on the specific claim asserted *or the name given to the claim*." *Argus*, 109 P.3d at 608–09 (emphasis added). Rather, the "same claim or cause of action requirement is bounded by *the injury for which relief is demanded*, and not by the legal theory on which the person asserting the claim relies." *Id.* (emphasis added) (citation omitted); *see also Gale*, 923 F.3d at 1256 ("Colorado 'disregard[s] the form of the action and instead look[s] at the actual injury underlying the first proceeding' using a transactional analysis to determine whether the claims 'seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis.'") (alterations in original) (quoting *Foster*, 394 P.3d at 1127).

We evaluate each of J.G.'s claims with these principles in mind.

---

[5] In a footnote, J.G. argues that the privity-of-parties element isn't met because her lawsuit must involve Regions Bank as a witness. *See* Op. Br. at 26 n.7. She notes that if the reversionary trust is deemed a countable asset, then any use of the trust is subject to Regions Bank's consent. But she abandoned this position at oral argument when clarifying that she only challenges the identity-of-claims element. And even if she didn't mean to abandon the argument, she cites no authority illustrating that we should consider *witnesses* when evaluating whether the *parties* are either identical or in privity.

### i.     Count I

In Count I, J.G. alleges that ALJ Nierenz failed to evaluate her Medicaid eligibility using the Supplemental Security Income eligibility standards, thereby violating 42 U.S.C. § 1396a(a)(10)(A)(ii)(V)–(VI). She alleges that ALJ Light correctly recognized that a resource is not "countable" under the Supplemental Security Income standards unless a person can liquidate and use it. Thus, neither the reversionary trust nor the annuity is countable. So J.G. asks the court to: (1) enforce § 1396a(a)(10)(A)(ii)(V)–(VI) and (2) declare that the Children's Extensive Support Waiver program must be administered using Supplemental Security Income regulations.

The injury that J.G. seeks to remedy in Count I is the denial of her Medicaid benefits. That's the same injury that she sought to remedy during her administrative proceedings. And during those proceedings, she raised many of the same points that are now alleged in Count I. For example, in her brief before ALJ Light, J.G. said that "[t]he Department is only permitted to consider income and resources as are available to the individual and when such income and resources can be liquidated." R. Vol. 2 at 151. She then stated that "[a] trust cannot be counted as a resource if the individual does not have the right to use the assets as well as the authority to dispose of that right." *Id.* She also said that when determining her Medicaid eligibility, "[t]he Department is required to use the same methodology as that used by [the Supplemental Security Income program]." *Id.* at 152. Based on these arguments, she

reasoned that the reversionary trust and annuity should be declared non-countable resources.

Given those similarities, it's clear that the substance of Count I was considered during the administrative proceedings. Tellingly, J.G. herself reduces Count I to one question: "Is [] ALJ [Light] correct or is [ALJ] Nierenz correct under federal law?" R. Vol. 1 at 112; *see also id.* at 113 ("Essentially, this Court would determine who is right under the federal law, [] ALJ [Light] or [ALJ] Nierenz."). That framing further proves that Count I was already addressed during the administrative proceedings— J.G. simply disagrees with the outcome.

We conclude that the identity-of-claims element is satisfied as to Count I.

### ii.    Count II

In Count II, J.G. alleges that the reversionary trust is neither an "asset of the individual" under 42 U.S.C. § 1396p(h)(1), nor an "available" asset to her under 42 U.S.C. § 1396a(a)(17), "as more fully set forth in the opinion of [] ALJ [Light] in the Initial Decision." R. Vol. 1 at 114, 118. J.G. alleges that in reversing ALJ Light, "[ALJ] Nierenz misunderstood the legal requirements of a proceeding brought under the National Vaccination Act" and misconstrued the nature of the reversionary trust. *Id.* at 115. J.G. alleges that the trust "was never intended by anyone in the [Vaccination Act] proceeding to be an 'asset of the individual'" because "DHHS is the grantor of the trust[, and] J.G. can only access [the trust's] funds for a limited purpose, i.e., ABA therapy." *Id.* at 116. So J.G. alleges that ALJ Nierenz violated § 1396p(h)(1) and asks the district court to enforce the statute. She also asks the court

11

to declare that the trust is neither an "asset of the individual" nor an "available" asset under the applicable statutes.

Again, the injury that J.G. seeks to remedy is the denial of her Medicaid benefits in the Final Decision. She sought to address the same injury during her administrative proceedings and raised many of the same points now raised in Count II. Before ALJ Light, J.G. argued that the trust wasn't an "asset of the individual" because it was created and funded by DHHS, not herself. R. Vol. 2 at 150. She said that the trust was not an available asset under § 1396p(h)(1) because it was "conferred on [her] under very strict guidelines," and she had "no right or power to direct or control" it. *Id.* at 150–51. She argued that "counting [the Reversionary Trust] as available would violate 42 U.S.C. § 1396a(a)(17)(B) and (C) . . . . [because] the federal government itself placed restriction on the distributions from the Reversionary Trust and Colorado Medicaid officials have no authority to alter the federal government's authority and power to determine how funds . . . must be utilized." *Id.* at 153. She made similar arguments to ALJ Nierenz.

Thus, in Count II, J.G. "seek[s] redress for essentially the same basic wrong" at issue in her administrative proceedings and on the same factual basis. *Gale*, 923 F.3d at 1256. That she asks the district court to interpret § 1396p(h)(1) and § 1396a(a)(17) the same way that ALJ Light did shows that Count II was already addressed during the administrative proceedings.

We therefore conclude that the identity-of-claims element is satisfied as to Count II.

### iii.      Count III

In Count III, J.G. alleges that ALJ Nierenz violated 42 U.S.C. § 1396p(e) by declaring the annuity payments "countable income," which rendered her ineligible for Medicaid. She says that ALJ Nierenz "ignored the fact that the annuity is assigned to [a] disability trust which already names the Department as remainder beneficiary." R. Vol. 1 at 121. J.G. argues that under § 1396p, an asset that's assigned to a disability trust is not countable income for purposes of her Medicaid eligibility. So she asks the district court to find that the annuity payments are not countable income.

As with Counts I and II, the injury that underlies Count III is the termination of J.G.'s Medicaid benefits. J.G. tried curing that injury through the administrative proceedings and relied on the same points that are now alleged in Count III. In her brief to ALJ Light, she stated that "[t]he original pleadings establishing the J.G. Disability Trust specifically authorize the guardian/conservator to transfer the annuity payments to the Disability Trust which was done without exception." R. Vol. 2 at 155. She then argued that "[t]he annuity payments cannot be counted as income to J.G. because they are not available to her nor can the payments be accessed or used for J.G.'s support." R. Vol. 2 at 156. She raised similar arguments in her brief to ALJ Nierenz.

Through Count III, then, J.G. asks the court to review a matter that was already addressed during the administrative proceedings. This is also proven by her allegation that ALJs Nierenz and Light incorrectly characterized the annuity. *See* R.

13

Vol. 1 at 120 ("[N]either the Initial Decision nor the Final Agency Decision is correct under federal law."). Though J.G. is dissatisfied with how the matter was decided, claim preclusion bars our review here.

We find that the identity-of-claims element is satisfied as to Count III.

### iv.    Count V

In Count V, J.G. alleges that ALJ Nierenz violated 42 U.S.C. § 1396a(r)(2)(A) by "counting income and resources for [her Medicaid eligibility] in a manner that is more restrictive than the [Supplemental Security Income] program." R. Vol. 1 at 124.

Once again, the injury underlying J.G.'s Count V is the loss of her Medicaid benefits. During the administrative proceedings, she sought redress for the same injury and raised the same argument. In her brief to ALJ Light, J.G. also cited § 1396a(r)(2)(A) to argue that "[t]he Department is required to use the same methodology as that used by [the Supplemental Security Income program]." R. Vol. 2 at 152. Further, we've already noted that during the administrative proceedings, many of J.G.'s arguments concerned why the reversionary trust and the annuity weren't countable resources or income. *See supra* Sections I.b.ii–iii.

J.G. even alleges that "[t]he decision of [] ALJ [Light] in this case is correct under federal law," while "[t]he decision of [ALJ] Nierenz is incorrect." R. Vol. 1 at 125. She's thus candid that through Count V, she merely seeks review of a matter already raised and decided.

The identity-of-claims element is satisfied as to Count V. And in sum, we hold that the district court didn't err in concluding that Colorado's four-part claim-preclusion test was satisfied as to each of J.G.'s claims.

### c.    J.G.'s Section 1983 Arguments

Before moving on, we briefly address two of J.G.'s arguments related to 42 U.S.C. § 1983. First, she argues that claim preclusion does not apply to "unreviewed administrative proceedings where Section 1983 was not raised nor could it be raised." Op. Br. at 19. Second, she says that she wasn't required to exhaust state administrative remedies before filing a federal complaint containing § 1983 claims. *Id.* at 13. Neither argument is persuasive.

To establish a § 1983 claim, a plaintiff must show that she was deprived of a federally protected right. *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003). Merely alleging a violation of federal law is not enough. *Mandy R. ex rel. Mr. and Mrs. R. v. Owens*, 464 F.3d 1139, 1146 (10th Cir. 2006). And merely labeling claims as "Section 1983 claims" is not enough, because Colorado's claim-preclusion analysis does not focus on how claims are styled. *Argus*, 109 P.3d at 608–09. We must look at the substance of each claim. *Id.*

Nowhere in J.G.'s complaint does she allege that she was deprived of a federally protected right. Nowhere in her briefing does she say which rights were

15

violated.[6] Nor does she ever allege that any applicable statutes, regulations, or policies are invalid or unconstitutional.[7] J.G.'s claims are instead based on alleged violations of federal law. That, alone, does not make them § 1983 claims. *Mandy R.*, 464 F.3d at 1146.

We acknowledge that during her administrative proceedings, J.G. could not have raised constitutional claims under § 1983. Had she challenged the constitutionality of a Department regulation, for example, ALJs Light and Nierenz would have been powerless under Colorado law to declare it unconstitutional. *See* 10 Colo. Regs. 2505-10, § 8.057.8.E. Separately, J.G. is correct that a plaintiff needn't exhaust state administrative proceedings before filing a federal complaint containing § 1983 claims. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 519 (10th Cir. 1998). But these principles do not help her. They are relevant when a party asserts true § 1983 claims—that is, claims involving alleged violations of federally protected rights. J.G.'s claims do not contain those allegations, so they are not § 1983 claims.

Despite that conclusion, we are not deciding whether J.G. has private rights of action under the statutes that she alleges were violated. Indeed, multiple circuits have

---

[6] J.G. does say that ALJ Nierenz's Final Decision "is specifically violative of federal rights because it allegedly ignored federal rights-creating language," yet she doesn't specify which rights were violated. Op. Br. at 25.

[7] The district court made a similar observation in its order denying J.G.'s motion for reconsideration. *See* R. Vol. 3 at 241 ("Tellingly, Plaintiff does not cite any specific paragraphs from her Amended Complaint where she asserted a facial challenge to Department regulations or policies, nor did the Court discern any in its review of the Amended Complaint.").

held that 42 U.S.C. § 1396a(10), on which Count I is based, creates a private right of action through § 1983. *See, e.g.*, *Watson v. Weeks*, 436 F.3d 1152, 1162 (9th Cir. 2006); *Sabree ex rel. Sabree v. Richman,* 367 F.3d 180, 183 (3d Cir. 2004); *S.D. ex rel. Dickson v. Hood,* 391 F.3d 581, 605–06 (5th Cir. 2004). But the Ninth Circuit has held that 42 U.S.C. § 1396a(a)(17), on which Count II is partially based, does not create a private right of action. *Watson*, 436 F.3d at 1162. As for the remaining statutes that J.G. cites, neither our circuit nor others have decided whether they create private rights of action. And we don't confront those questions here, for the parties haven't discussed them in their briefs. *United States v. Chee*, 514 F.3d 1106, 1112 n.1 (10th Cir. 2008).

Regardless, this appeal's outcome doesn't turn on whether the relevant statutes create private rights of action through § 1983. Even if they do, it remains true that the injury underlying J.G.'s claims is her loss of Medicaid benefits. As we've noted repeatedly, that is the same injury that J.G. sought to remedy during her administrative proceedings. And under Colorado claim-preclusion law, the identity-of-claims element is satisfied when a party seeks redress for the same injury as before. *Gale*, 923 F.3d at 1256. J.G. cannot avoid that conclusion.

## II.    Order Denying Motion for Reconsideration and Motion to Amend

After granting ALJ Nierenz and Director Bimestefer's motion to dismiss, the district court entered a final judgment that dismissed Claims I, II, III, and V with prejudice. One month later, J.G. moved for reconsideration under Federal Rule of Civil

17

Procedure 59(e) and to amend her complaint. The district court denied both motions, and J.G. argues that the court erred by doing so.

We review the denial of a motion to amend for abuse of discretion. *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). Generally, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). But once a judgment is entered, that presumption is reversed, and "the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (citations omitted). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Id.* (citation omitted).

J.G. acknowledges the above precedent but says that allowing amendment is appropriate if we conclude that her motion for reconsideration should have been granted. We review the denial of a motion for reconsideration for abuse of discretion. *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001). A motion for reconsideration may be granted when "the court has misapprehended the facts, a party's position, or the controlling law." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted).

J.G. hasn't identified a misapprehension of any facts, arguments, or law that warrants granting her reconsideration motion. Throughout her briefing on appeal, she presents arguments and issues that she could have raised—and did raise—during the administrative proceedings and before the district court. Those matters are inappropriate

for a reconsideration motion. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (motions for reconsideration are inappropriate for "revisit[ing] issues already addressed or advanc[ing] arguments that could have been raised in prior briefing"). Thus, we see no error in the district court's denial of J.G.'s motion for reconsideration. And because the district court correctly denied the motion for reconsideration, it also correctly denied J.G.'s motion to amend. *See Tool Box*, 419 F.3d at 1087.

Moreover, "[c]ourts have refused to allow a postjudgment amendment when . . . the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave." *Id.* at 1088. If J.G. truly meant to allege violations of federally protected rights under § 1983, she could have amended her complaint to add those claims before the district court entered judgment. She offers no reason for us to think otherwise.

We conclude that the district court didn't abuse its discretion in denying J.G.'s motion for reconsideration and motion to amend.

## CONCLUSION

The district court's orders are affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

19