**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ILON T. WILLIAMS,

    Plaintiff - Appellant,

v.

STEWART TITLE COMPANY,

    Defendant - Appellee.

No. 19-1129
(D.C. No. 1:18-CV-00397-PAB-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Ilon Williams appeals the district court's dismissal of her claims against

Stewart Title Company (STC). Because we find that her claims were compulsory

counterclaims in a prior state-court action, we affirm.

**Background**

Williams initiated the sale of a property she owned to satisfy a $1.4 million

judgment lien on that property. She entered a contract for sale of the property, and

the buyers used STC as their title company. As alleged by Williams, STC is an

"agent authorized to issue title policies on behalf of" Stewart Title Guarantee

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Company (STGC); in this case, STC issued a title commitment and a title insurance policy to the buyers "in the name of" STGC. App. vol. 1, 68–69. But even though the lien still encumbered the property, the title commitment did not reflect as much. Williams contends that, based on the title commitment, she assumed the property was no longer encumbered. And as part of the closing process, Williams signed an affidavit in which she swore that no liens encumbered the property. For its part, STGC asserts that it relied on this affidavit when issuing the title policy. After the sale, the individual who held the judgment lien began to execute that lien against the property.

Litigation ensued.[1] The buyers sued Williams in Colorado state court. The state court added STGC as an involuntary plaintiff. STGC in turn brought claims against Williams, both on its own behalf and on behalf of the buyers. Williams counterclaimed against STGC, and several of STGC's claims and Williams's counterclaims went to trial. The jury found for STGC itself and for STGC on behalf of the buyers on all their claims; the jury found against Williams on all her counterclaims.[2]

---

[1] Like the district court, we take judicial notice of the record in the state-court action. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[2] Williams appealed, arguing that the state trial court improperly granted summary judgment on two of her claims and that evidentiary issues at trial entitled her to a new trial on the remaining claims. *Stewart Title Guaranty Co. v. Williams*, No. 2018CA521, slip op. at 34, 43 (Colo. App. Apr. 11, 2019) (unpublished). The state appellate court rejected both arguments. *Id.* at 42, 46, 50–51, 53–54. And the Colorado Supreme Court denied Williams's petition for a writ of certiorari. *Williams v. Stewart Title Guaranty Co.*, No. 2019SC424 (Colo. Dec. 9. 2019) (unpublished).

Williams then initiated this federal action against STC, which was not a party to the state-court action. She brought claims for negligence per se, breach of contract, and negligent misrepresentation—all based on STC's failure to include the judgment lien in the title commitment. STC moved to dismiss the complaint, arguing in part that Williams's claims are barred because they were compulsory counterclaims in the state-court action.[3] The district court agreed and granted the motion. Specifically, it found that Williams's federal-court claims were compulsory counterclaims in the state-court action because the federal-court claims were logically related to the state-court claims and because STC and STGC were in privity in the state-court action.

Williams appeals.

**Analysis**

Williams argues that (1) her federal-court claims were not compulsory counterclaims because STC was not in privity with STGC during the state-court action and (2) STC should be judicially estopped from arguing that it is in privity

---

[3] STC also argued that the district court should stay the case until the state-court action became final, but the district court declined to do so. After we heard oral argument in this case, the Colorado Supreme Court denied Williams's petition for a writ of certiorari. *See Williams*, No. 2019SC424. STC then filed a letter of supplemental authority asserting that the state-court action is now final and arguing that, as a result, Williams's federal-court claims are now both issue and claim precluded. Because we uphold the district court's determination that Williams's claims here were compulsory counterclaims in the state-court action, we need not address these proffered alternative grounds for affirming.

with STGC because STGC argued for an inconsistent position in state court. We address each argument in turn.[4]

## I.      Compulsory Counterclaims

"We review de novo the district court's determination that the claims" Williams asserts here "were compulsory counterclaims" in the state-court action. *Fox v. Maulding*, 112 F.3d 453, 457 (10th Cir. 1997). We look to Colorado law to determine both whether the "claim[s were] compulsory counterclaim[s]" in the state-court action "and, if so, the effect of a failure to raise such" claims. *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs.*, 497 F.3d 1096, 1100 (10th Cir. 2007). In Colorado, a counterclaim is compulsory and thus barred from being brought in a future action when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Colo. R. Civ. P. 13; *see also Visual Factor, Inc. v. Sinclair*, 441 P.2d 643, 644–45 (Colo. 1968) (explaining that test for

---

[4] STC argues that we lack diversity jurisdiction due to an insufficient amount in controversy. *See* 28 U.S.C. § 1332 (providing for federal diversity jurisdiction if, among other things, amount in controversy "exceeds . . . $75,000"). Specifically, STC contends that Williams cannot meet the jurisdictional amount because her theory of recovery relies on a doctrine inapplicable to this case. But to consider STC's argument, we would have to consider the merits of Williams's claims, which is inappropriate when assessing the amount in controversy for jurisdictional purposes. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 n.4 (10th Cir. 2012) (considering it "improper[]" for court to "look beyond jurisdictional matters and consider the merits of the claims" when determining amount in controversy); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1332 n.9 (11th Cir. 2006) ("When determining the amount in controversy for jurisdictional purposes, however, courts cannot look past the complaint to the merits . . . ."), *abrogated in part on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014). Because Williams alleged that she suffered over $525,000 in damages, we have diversity jurisdiction. *See* § 1332.

compulsory counterclaims "inquires into the logical relationship between the opposing claims"; finding that current claims were barred because they were compulsory counterclaims required to have been brought in previous suit). Here, Williams does not argue that her federal-court claims do not arise out of the same transaction or occurrence as her state-court ones. Instead, she contends only that her federal-court claims against STC are not barred because STC was not an "opposing party" in the state-court action. Colo. R. Civ. P. 13.

For the purposes of Colorado compulsory counterclaims, a nonparty such as STC was an "opposing party" in an action if it was in privity with an actual party. *Allen v. Martin*, 203 P.3d 546, 559 (Colo. App. 2008). For STC and STGC to have been in privity in the state-court action, they must have had "both [1] a 'substantial identity of interests' and [2] a 'working or functional relationship . . . in which'" STGC "presented and protected" STC's interests. *Foster v. Plock*, 394 P.3d 1119, 1126 (Colo. 2017) (omission in original) (quoting *S.O.V. v. People ex rel. M.C.*, 914 P.2d 355, 360 (Colo. 1996) (en banc)). Williams contends that STC meets neither prong of this privity test.[5]

---

[5] Williams devotes much of her briefing to repeating her overarching assertion that the factual determination of whether parties are in privity can never be determined at the motion-to-dismiss stage. Although it may sometimes be inappropriate to determine at dismissal stage whether parties are in privity, that is not always the case. *See Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (upholding district court's determination of privity on review of order granting motion to dismiss). Here, the complaint and the state-court record include sufficient information to make a privity determination, including, for instance, how Williams characterizes STC and STGC's relationship in her complaint. *See Fox*, 112 F.3d at 459–60 (relying on plaintiff's pleadings to determine that defendants were in privity

Williams first argues that STC and STGC were not in privity because they did not have a substantial identity of interests. Specifically, she argues that STC did not act within the scope of its agency relationship with STGC when it failed to identify the judgment lien. Her reliance on principal-agent law is correct: when determining whether parties have a substantial identity of interests, Colorado courts "look[] to law governing the underlying relationship" between the parties. *Cruz v. Benine*, 984 P.2d 1173, 1177 (Colo. 1999) (en banc). And here, STC and STGC were in a principal-agent relationship. But Williams is incorrect to assert that STC's actions were outside the scope of that relationship. Williams herself alleges in her amended complaint that STC was an "agent authorized to issue title policies on behalf of" STGC, and STC agreed with this characterization.[6] App. vol. 1, 68. Thus, when STC issued the buyers a title policy, it was acting within the scope of its agency relationship: issuing title policies is exactly what STGC authorized STC to do. And it is this title policy and the underlying title commitment that served as the basis for Williams's state-court

with defendant in prior action); *Robinson*, 56 F.3d at 1275 (determining privity based on complaint's characterization of defendant's relationship with party in previous action).

[6] Williams attached STC and STGC's title insurance underwriting agreement to her opening brief. But this document was neither attached to nor referenced by Williams's amended complaint. We therefore do not rely on it. *Cf. Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (noting that when ruling on motion to dismiss, district court may sometimes "consider documents attached to or referenced in the complaint"). Instead, we rely on how the parties characterized STC and STGC's principal-agent relationship below. *See Robinson*, 56 F.3d at 1275.

claims. Accordingly, the activities of STC at issue in the state-court action were taken within the scope of its agency relationship with STGC.

Moreover, because a principal is liable for its agent's actions taken within the scope of the agency relationship, STGC was liable for any harm caused by STC's actions. *See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 622 (Colo. 2005) (en banc). We thus find that, based on the principal-agent relationship and STGC's resultant liability for STC's actions, STC and STGC had a substantial identity of interests in Williams's state-court action.[7] *See Foster*, 394 P.3d at 1125 (noting that privity can arise from "principal-agent . . . relationships"); *id.* at 1126 (finding that two parties had substantial identity of interests "because both parties had an interest in a judgment that" reached same conclusion).

Williams next argues that STC and STGC were not in privity because they did not have "a 'working or functional relationship . . . in which'" STGC "presented and protected" STC's interests in the state-court action. *Foster*, 394 P.3d at 1126 (omission in original) (quoting *S.O.V.*, 914 P.2d at 360). This prong of the privity test requires that the actual party's defense "paralleled a defense that [the nonparty] would have made had [it] been named in the first action." *Id.* Here, STGC's defense

---

[7] The district court found that STC and STGC had a substantial identity of interests because STC is a wholly owned subsidiary of STGC. Because we find a substantial identity of interests based on STC and STGC's agency relationship, we need not address Williams's arguments attacking the district court's finding of privity based on this corporate relationship. *See United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014) ("[W]e have discretion . . . to affirm on any ground adequately supported by the record . . . .").

did just that. STGC adamantly and successfully defended against each of Williams's claims, even though those claims were based on STC's failure to identify the lien when issuing the title policy and commitment. *See id.* (finding that party's defense paralleled defense that nonparty would have asserted when liability of party was based on actions of nonparty).

In arguing otherwise, Williams first cites to several stray comments in the state-court record in which STGC noted that STC, and not STGC, performed the title search that supported STGC's underwriting of the title policy. But none of these comments impacted STGC's presentation and protection of STC's interests. Indeed, in one such comment highlighted by Williams, after STGC noted that STC performed the title search, it further stated that "more to the point, [STC] did not act negligently or wrongfully." App. vol. 1, 296. Thus STGC in fact offered a defense that "paralleled a defense" STC "would have made." *Foster*, 394 P.3d at 1126. We thus decline to interpret STGC's stray comments as evidence that it did not "present[] and protect[]" STC's interests in the state-court action. *Id.* (quoting *S.O.V.*, 914 P.2d at 360).

Relatedly, Williams argues that STC did not adequately represent STGC's interests because "STGC successfully blamed STC," Aplt. Br. 19, and "[t]he state court found that STGC was not answerable for STC's conduct." Rep. Br. 20. These assertions are incorrect: STGC did not escape liability in the state-court action because it successfully blamed STC. Indeed, the jury's verdict form reflects that the jury very well could have held STGC liable for STC's actions. For example, the trial

8

court asked the jury to determine whether "Williams prove[d] by a preponderance of the evidence that [*STGC*] was negligent in communicating information concerning [the property] to her." App. vol. 1, 109 (emphasis added). Moreover, the state court referred to the STC employee with whom Williams interacted as "STGC's agent." *Id.* at 176. In short, STGC won in state court *not* because it successfully blamed STC but because the jury found that Williams failed to prove her claims.

Thus, we find that both of Williams's adequate-representation arguments fail and that STGC and STC had "a 'working or functional relationship . . . in which'" STGC "presented and protected" STC's interests in the state-court action. *Foster*, 394 P.3d at 1126 (omission in original) (quoting *S.O.V.*, 914 P.2d at 360). And because, as explained above, we also find that STGC and STC had "a 'substantial identity of interests'" in the state-court action, we conclude that STGC and STC were in privity in that action. *Id.* (quoting *S.O.V.*, 914 P.2d at 360). As such, STC was an "opposing party" in the state-court action, and Williams's current federal-court claims were compulsory counterclaims in that action. Colo. R. Civ. P. 13. Accordingly, Williams may not assert these claims here. *See Visual Factor, Inc.*, 441 P.2d at 644–45.

## II. Judicial Estoppel

Williams separately contends that STC should be judicially estopped from arguing that it was in privity with STGC in the state-court action because STGC argued for an inconsistent position in state court. The district court implicitly rejected

9

this argument below, and we review that "decision for abuse of discretion."[8]

*Bradford v. Wiggins*, 516 F.3d 1189, 1193 (10th Cir. 2008). Judicial estoppel requires that (1) "a party's subsequent position [be] 'clearly inconsistent' with its former position," (2) the party "succeeded in persuading a court to accept that party's former position," and (3) the party "would gain an unfair advantage in the litigation if not estopped." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quoting *New Hampshire*, 532 U.S. at 750).

In arguing for judicial estoppel, Williams repeats her assertion that "STGC successfully persuaded the state court to accept that STC was its 'limited agent' and that STGC could not be vicariously liable for STC's conduct." Aplt. Br. 33. And STGC's position, Williams continues, is inconsistent with STC's current argument that it was in privity with STGC. But as just discussed, Williams's characterization of what happened in the state-court action is deeply flawed: STGC did not argue that it

---

[8] Relying on *Rascon v. United States West Communications, Inc.*, 143 F.3d 1324 (10th Cir. 1998), Williams argues for de novo review. To be sure, *Rascon* did state that "the application of judicial estoppel presents a legal question" subject to "de novo" review. *Rascon*, 143 F.3d at 1329. But *Rascon* grappled with whether to recognize the doctrine of judicial estoppel at all. *Id.* at 1330–33 (stating that we previously "rejected the doctrine of judicial estoppel" and deciding to do so again). We began applying judicial estoppel only after the Supreme Court recognized the doctrine in *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068–69 (10th Cir. 2005) (noting that prior to Supreme Court's use of judicial estoppel, "this circuit . . . repeatedly refused to apply this principle"). And after *Johnson*, we consistently applied an abuse-of-discretion standard to judicial-estoppel analyses. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 989–90 (10th Cir. 2019) ("We therefore review the district court's judicial-estoppel decision for abuse of discretion."). We continue to do so here.

10

was not liable because STC was to blame, nor did it prevail in the state-court action based on such an argument. Accordingly, because STGC did not "succeed[] in persuading" the state court that it could not be liable for STC's conduct, the district court did not abuse its discretion in refusing to find STC judicially estopped from arguing that it was in privity with STGC in the state-court action. *Eastman,* 493 F.3d at 1156.

## Conclusion

Because we determine that STGC and STC had a "substantial identity of interests" and that STGC "presented and protected" STC's interests in the state-court action, *Foster*, 394 P.3d at 1126 (quoting *S.O.V.*, 914 P.2d at 360), we conclude that STC was in privity with STGC and was therefore an "opposing party" to the state-court action, Colo. R. Civ. P. 13. As such, we further conclude that the claims Williams now attempts to assert in her federal-court action were compulsory counterclaims. Because Williams may not reassert such claims here, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge

11