24CA2039 US Bank v 355 Lake 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2039
Pitkin County District Court No. 22CV30080
Honorable Christopher G. Seldin, Judge
Honorable Laura C. Makar, Judge

---

U.S. Bank National Association, as the successor trustee for the holders of the
Thornburg Mortgage Securities Trust 2007-5,

Defendant-Appellee,

v.

335 Lake Avenue LLC, a Colorado limited liability company,

Defendant-Appellant,

and

James K. Daggs,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Kutak Rock LLP, Jeremy D. Peck, Denver, Colorado, for Defendant-Appellee

Fairfield and Woods, P.C., John M. Tanner, Lee Katherine Goldstein, Denver,
Colorado, for Defendant-Appellant and Appellant

¶ 1	For seventeen years, James K. Daggs (Daggs) and U.S. Bank National Association, as trustee on behalf of the holders of the Thornburg Mortgage Securities Trust 2007-5 Mortgage Loan Pass-Through Certificates Series 2007-5, have been embroiled in legal battles that ultimately rest on a single issue — whether Daggs must repay a residential mortgage loan that he obtained in 2007. The procedural history of this case encompasses two nonjudicial foreclosure proceedings, a decade-long civil action, an unsuccessful appeal of that judgment, a bankruptcy case, and the interpleader action that is the subject of this appeal.

¶ 2	Daggs and his limited liability company, 335 Lake Avenue LLC (355 Lake) (jointly, the Daggs parties), appeal three orders entered in the interpleader action: (1) an order granting the trustee's motion to dismiss 335 Lake's cross-claims; (2) an order granting the trustee's motion for summary judgment; and (3) an order denying 335 Lake's request to take discovery from the trustee. We affirm.

## I.	Background

¶ 3	On August 3, 2007, Daggs and Ellen G. Daggs obtained a mortgage loan from UBS AG Tampa Branch (the original noteholder). (Ellen G. Daggs is not a party to this appeal.) As part

1

of the loan transaction, Daggs and Ellen G. Daggs executed and delivered to the original noteholder a promissory note (the original note) in the principal amount of $4,770,000 and, to secure the original note, a deed of trust encumbering residential real property located at 335 Lake Avenue in Aspen (the property). The original noteholder assigned the original note to Thornburg Mortgage Securities Trust 2007-5 Mortgage Loan Pass-Through Certificates Series 2007-5.

¶ 4 Daggs stopped making payments on the original note in 2010 and transferred ownership of the property to 335 Lake the next year.

### A. The Two Nonjudicial Foreclosures

¶ 5 After Daggs defaulted on the original note, the trustee filed a nonjudicial foreclosure proceeding on June 23, 2009. The trustee withdrew the 2009 foreclosure proceeding, however, after Daggs executed a modified promissory note (the modified note).

¶ 6 Daggs defaulted on the modified note, and the trustee filed a second nonjudicial foreclosure proceeding on June 24, 2011. The trustee voluntarily dismissed that proceeding on April 24, 2012, after the Daggs parties filed the civil action described below.

## B. The Prior Case

¶ 7 The Daggs parties filed suit against the original noteholder, the trustee, and other defendants in the Pitkin County District Court (the prior case) on July 6, 2011. In the prior case, the Daggs parties asserted claims to quiet title in the property, for declaratory judgments that no money was due and owing under the modified note and that the modified note and deed of trust were unenforceable, and for an injunction against any foreclosure based on the modified note and deed of trust.

¶ 8 On December 3, 2019, following a bench trial, the district court entered a final judgment (the 2019 judgment) against the Daggs parties. In the 2019 judgment, the district court held, as relevant here:

- The modified note is "valid and enforceable."

- The deed of trust is "valid and enforceable."

- The deed of trust "encumbers the [p]roperty."

- Daggs is "the maker of the [modified] [n]ote."

- The mortgage loan's "outstanding principal balance [wa]s $5,080,497.18."

3

- "[T]he total amount due as of September 1, 2019, was $7,197,669.42."

- The trustee is "the bearer [of the modified note] entitled to payment."

¶ 9    The Daggs parties unsuccessfully appealed the 2019 judgment (the prior appeal).  *See 335 Lake Ave., LLC v. U.S. Bank Nat'l Ass'n ex rel. Holders of the Thornburg Mortg. Sec. Tr. 2007-5 Mortg. Loan Pass-Through Certificates Series 2007-05*, (Colo. App. No. 20CA0101, Aug. 12, 2021) (not published pursuant to C.A.R. 35(e)). The 2019 judgment became final when the supreme court denied the Daggs parties' petition for a writ of certiorari in April 2022.

### C.    The Bankruptcy Case

¶ 10    During the pendency of the prior appeal, 335 Lake filed for protection under Chapter 11 of the United States Bankruptcy Code (the bankruptcy case).  *See In re 335 Lake Ave., LLC*, No. 20-12378-JGR (Bankr. D. Colo. Aug. 19, 2021).  The trustee filed a claim in the bankruptcy case to collect on the modified note.  335 Lake objected to the trustee's claim and filed a motion for leave to sell the property, free and clear of any interest the trustee may claim in it (the sale motion).  The trustee opposed the sale motion.

¶ 11     In its order granting the sale motion (the sale order), the bankruptcy court said that "[the trustee]'s lien on the property, which [335 Lake] disputes, shall attach to the proceeds of the sale, which shall be [in] an account earning the highest interest rate possible while still being compliant with 11 U.S.C. § 345." *In re 335 Lake Ave., LLC*, No. 20-12378-JGR (Bankr. D. Colo. Apr. 7, 2021) (unpublished order).

¶ 12     After the bankruptcy court entered the sale order, 335 Lake, the trustee, and First Western Trust Bank (the escrow agent) entered into an escrow agreement (the escrow agreement) for the purpose of authorizing the escrow agent to "take possession of the net sales proceeds from the sale of the [p]roperty . . . pending the outcome of the [prior appeal] and all disputes" relating to the trustee's claim in the bankruptcy case to collect on the modified note.  In addition, the escrow agreement said that the trustee "need not take additional steps to perfect its lien in the [sale] proceeds." The bankruptcy court approved the escrow agreement.

¶ 13     335 Lake then sold the property to a third party, and, under the terms of the escrow agreement, the net sale proceeds were delivered to the escrow agent.  As provided in the escrow agreement,

the escrow agent held the net sale proceeds and all other accrued amounts (the escrowed funds) in an escrow account. (According to the escrow agreement, the net proceeds from the sale of the property were estimated to be $8,319,328.36.)

¶ 14 After the division affirmed the 2019 judgment in the prior appeal, the bankruptcy court entered an order dismissing the bankruptcy case. The bankruptcy court further ordered that the escrowed funds "shall only be disbursed upon written agreement of the parties or an order from a Colorado state court having jurisdiction over the matter."

### D. The Interpleader Action

¶ 15 After the supreme court denied the Daggs parties' petition for a writ of certiorari, the trustee sent the escrow agent a written request for the trustee's portion of the escrowed funds, calculated based on the district court's findings in the 2019 judgment regarding the unpaid balance of the mortgage loan. Two days later, the Daggs parties objected in writing to the trustee's disbursement request.

¶ 16 Because the trustee and the Daggs parties were unable to resolve their disbursement dispute, the escrow agent filed an

interpleader action to obtain a determination as to which entity or entities were entitled to the escrowed funds and in what amounts. The escrow agent later filed an amended complaint.

¶ 17 335 Lake filed an answer to the escrow agent's amended complaint, as well as cross-claims against the trustee. In its cross-claims, 335 Lake sought a declaratory judgment that the escrowed funds belonged to 335 Lake alone and asked the district court to quiet title to the escrowed funds in its favor.

¶ 18 The trustee filed an answer to the amended complaint, cross-claims against 335 Lake, and a third-party complaint against Daggs. In those claims, the trustee pleaded causes of action for breach of the escrow agreement and a declaratory judgment that it was entitled to a portion of the escrowed funds sufficient to satisfy all amounts due to it. (The trustee pleaded its breach of contract claim against only 335 Lake and pleaded its declaratory judgment claim against both of the Daggs parties. We refer to those claims as the trustee's claims.) The trustee requested an order directing the clerk of court to disburse the trustee's portion of the escrowed funds to the trustee. The district court entered an order authorizing the escrow agent to deposit the escrowed funds into the

court registry, and the escrow agent did so. The district court then dismissed the escrow agent from the interpleader action, with prejudice.

¶ 19 In addition, the trustee filed a motion to dismiss 335 Lake's cross-claims under C.R.C.P. 12(b)(5) (the motion to dismiss). In the motion to dismiss, the trustee argued that 335 Lake's cross-claims were "barred by claim preclusion [and] issue preclusion" and "otherwise fail[ed] as a matter of law."

¶ 20 "[F]or reasons stated in [the trustee]'s briefing," the district court entered an order granting the motion to dismiss (the dismissal order). In the dismissal order, the district court concluded that the 2019 judgment barred 335 Lake from litigating the issues raised in its cross-claims under, "at a minimum[,] . . . the doctrine of claim preclusion"; the district court's rulings in the 2019 judgment "with respect to [the trustee]'s entitlement to payment" were not dicta, as 335 Lake had argued; and the 2019 judgment and the prior appeal established that the trustee was "free . . . to enforce the [modified] note." The district court also rejected the Daggs parties' argument that "the statute of limitations bar[red] [the trustee] from acting on the [2019] judgment."

¶ 21     Four months later, the trustee filed a motion for summary judgment in its favor on its claim against 335 Lake for breach of the escrow agreement and its claim "seeking a declaration that, pursuant to the mortgage loan and [the 2019 judgment], the [trustee] is entitled to a portion of the escrow[ed] funds sufficient to satisfy all amounts due and owing to it, including reasonable [attorney] fees and costs" (the summary judgment motion).

¶ 22     The district court granted the summary judgment motion (the summary judgment order), in part. The district court incorporated the dismissal order into the summary judgment order and concluded that the doctrine of claim preclusion barred the Daggs parties' arguments. The district court determined that 335 Lake was liable to the trustee on the trustee's claim for breach of the escrow agreement and entered judgment in the trustee's favor. The district court said, however, that the trustee's damages claim presented disputed issues of material fact and therefore required a trial.

¶ 23     The trustee then filed a motion for an award of damages and entry of a final judgment (the damages motion). In support of the damages motion, the trustee attached an affidavit from the trustee's

document control officer, who said under oath that the amount due and owing to the trustee under the mortgage loan, as of September 28, 2024, was $8,216,858.00. In the affidavit, the document control officer also said that, beginning on September 29, 2024, and "continuing on each day thereafter, the amount due and owing under the subject mortgage loan increase[d] by $798.74 per day."

¶ 24 In their response to the damages motion, the Daggs parties said that, "[w]ithout waiving their right to appeal from the underlying summary judgment as to liability," they did not "object to entry of final judgment in the amount of [$8,216,858.00] plus a *per diem* of $798.74 for each day since September 26, 2024, as prayed for in the [damages] [m]otion." The Daggs parties also said they did not object to "the registry of the court paying that amount to [the trustee] immediately" and vacation of the pending trial setting.

¶ 25 The district court entered a final judgment in favor of the trustee and against the Daggs parties, jointly and severally, in the amount of $8,248,807.60, together with postjudgment interest at a per diem rate of $798.74.

### E. 335 Lake's Discovery Requests

¶ 26 While the summary judgment motion was pending, counsel for the Daggs parties contacted counsel for the trustee regarding dates for a C.R.C.P. 30(b)(6) deposition and submitted proposed deposition topics.

¶ 27 The trustee objected to the proposed deposition topics. When the trustee raised the issue with the district court, it argued that the topics were "wholly inconsistent" with the 2019 judgment, the prior appeal, and the dismissal order. The trustee asserted that the Daggs parties were attempting to take discovery to "reinvestigate, relitigate, and otherwise revisit discovery, issues, and/or claims that were, or could have been, brought and litigated" in the prior case.

¶ 28 Following a "discovery dispute conference," the district court entered an order denying 335 Lake's request to take further discovery (the discovery order). The district court noted that its entry of the dismissal order alone justified denying 335 Lake's discovery requests.

### F.   This Appeal

¶ 29    In this appeal, the Daggs parties contend that the district court erred by entering the dismissal order, the summary judgment order, and the discovery order.

### II.   Analysis

#### A.   The District Court Did Not Err by Entering the Dismissal Order

##### 1.   Standard of Review

¶ 30    "We review a 12(b)(5) motion de novo and apply the same standards as the [district] court." *Denv. Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011).

##### 2.   335 Lake's Cross-Claims Fail Under the Doctrine of Issue Preclusion

¶ 31    335 Lake argues that its cross-claims were not subject to dismissal under C.R.C.P. 12(b)(5) based on an affirmative defense, such as claim preclusion. It further contends, in the alternative, that the district court erred by granting the dismissal motion because it misapplied the doctrine of claim preclusion with respect to 335 Lake's cross-claims, incorrectly concluded that the doctrine did not bar the trustee's claims, and misinterpreted the statute of limitations governing the trustee's claims.

¶ 32   Under 335 Lake's reasoning, because the trustee's claims failed, only the Daggs parties had a valid claim to the escrowed funds.

¶ 33   We begin by examining whether 335 Lake's cross-claims were subject to dismissal under an affirmative defense.

¶ 34   Although "[a]n affirmative defense, such as issue preclusion, is typically raised in an answer," such a defense may serve as the basis for a dismissal motion when "the applicability of the defense [is] clearly indicated" and appears "on the face of the pleading to be used as a basis for the motion." *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶¶ 41, 45, 312 P.3d 1155, 1163-64 (quoting 5B *Wright & Miller's Federal Practice & Procedure* § 1357, at 708-13 (3d ed. 2004)); *see Williams v. Rock-Tenn Servs., Inc.*, 2016 COA 18, ¶ 20, 370 P.3d 638, 642 ("[B]ecause the factual allegations in the complaint established a clearly applicable affirmative defense, that affirmative defense provided a proper basis for dismissal pursuant to C.R.C.P. 12(b)(5)."); *see also Dave Peterson Elec., Inc. v. Beach Mountain Builders, Inc.*, 167 P.3d 175, 176-77 (Colo. App. 2007) (noting that an overwhelming majority of federal and state jurisdictions have "concluded that a defendant may assert a claim

preclusion defense for the first time in a motion to dismiss where the plaintiff fails to show prejudice").

¶ 35    335 Lake asserts that nothing in its cross-claims "indicate[d] the existence of an affirmative defense that w[ould] bar the award of any remedy," *Bristol Bay Prods.*, ¶ 44, 312 P.3d at 1164 (quoting 5B *Wright & Miller's Federal Practice & Procedure* § 1357, at 708), and that no such defense appeared "on the face of" the cross-claims, *id.* at ¶ 45, 312 P.3d at 1164 (quoting 5B *Miller & Wright's Federal Practice & Procedure* § 1357, at 708-13).  We disagree.

¶ 36    335 Lake peppered references to the prior case, including an express reference to the 2019 judgment, throughout ten paragraphs of its cross-claims.  Moreover, the escrow agent referenced the 2019 judgment in its pleadings and attached it as an exhibit to its amended complaint.  The district court could therefore view the 2019 judgment in its entirety in the court file.

¶ 37    Thus, the district court properly considered the rulings in the 2019 judgment when it adjudicated the motion to dismiss.  *See id.* at ¶¶ 41, 45, 312 P.3d at 1163-64; *see also City of Aurora v. 1405 Hotel, LLC*, 2016 COA 52, ¶ 13, 371 P.3d 794, 799-800 ("[A] court may consider documents referenced in a complaint and matters of

14

which it may take judicial notice without converting a motion to dismiss into a motion for summary judgment.").

¶ 38 Because the 2019 judgment showed that 335 Lake was attempting to relitigate issues that the district court decided against it in the prior case, in the interpleader action, the district court did not err by considering whether to dismiss 335 Lake's cross-claims based on a preclusion theory.

¶ 39 Taking 335 Lake's affirmative defense argument to its logical conclusion, a party that lost a civil action could simply raise in a new case the issues decided against it in the prior action and then argue that the court in the new case must ignore its blatant attempt to take a second bite of the apple. This conclusion is a recipe for unnecessary duplicative litigation and a waste of judicial resources, contrary to the Colorado courts' "steady march toward streamlining litigation and reducing costs for litigants." *Smith v. Terumo BCT, Inc.*, 2025 COA 85, ¶ 44, ___ P.3d ___, ___ (Grove, J., concurring dubitante).

¶ 40 We thus reject 335 Lake's argument that its cross-claims could not be dismissed on issue or claim preclusion grounds.

15

¶ 41     Next, we examine whether 335 Lake's cross-claims failed under the doctrines of claim preclusion and issue preclusion.

¶ 42     Claim preclusion bars a claim in a later proceeding if four elements are met: (1) "the judgment in the prior proceeding was final"; (2) "the prior and current proceeding involved identical subject matter"; (3) "the prior and current proceeding involved identical claims for relief"; and (4) "the parties to both proceedings were identical or in privity with one another." *Foster v. Plock*, 2017 CO 39, ¶ 12, 394 P.3d 1119, 1123 (quoting *Meridian Serv. Metro. Dist. v. Ground Water Comm'n*, 2015 CO 64, ¶ 36, 361 P.3d 392, 398). "In the broadest sense, claim preclusion prevents the perpetual [relitigation] of the same claim or cause of action. The goal of the doctrine is to promote judicial economy by barring a claim litigated in a prior proceeding from being litigated again in a second proceeding." *Id.* at ¶ 12, 394 P.3d at 1122.

¶ 43     In contrast, issue preclusion "prevents the [relitigation] of discrete issues, rather than causes of action." *Id.* at ¶ 13, 394 P.3d at 1123. Under the doctrine of issue preclusion, "once a particular issue is finally determined in one proceeding, parties to this proceeding are barred from [relitigating] that particular issue again

in a second proceeding, even when the actual claims for relief in the two proceedings are different." *Id.* "[T]he doctrine of issue preclusion is broader than the doctrine of claim preclusion because it applies to claims for relief different from those litigated in the first action, but narrower in that it applies only to issues actually litigated." *Id.*

¶ 44    Issue preclusion prohibits litigation of an issue in a second proceeding if four elements are met:

> (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding.

*Id.* Similar to claim preclusion, the doctrine of issue preclusion "protect[s] litigants from needless relitigation of the same issues, further[s] judicial economy, and promote[s] the integrity of the judicial system by affirming that one can rely upon judicial decrees because they are final." *Wolfe v. Sedalia Water & Sanitation Dist.*, 2015 CO 8, ¶ 14, 343 P.3d 16, 22.

¶ 45     Although the prior case and the interpleader action both centered on alleged breaches of contract, the cases involved the alleged breach of *different contracts*. The central question in the prior case was whether Daggs breached the modified note by failing to pay it, while the interpleader action arose from 335 Lake's alleged breach of the escrow agreement.

¶ 46     By the time the Daggs parties and the trustee asserted their respective claims in the interpleader action, the parties were no longer litigating how much, if anything, Daggs owed the trustee under the modified note. Rather, they disputed whether the Daggs parties had breached the escrow agreement by blocking the trustee from recovering out of the escrowed funds the unpaid balance of the mortgage loan — a sum that the district court adjudicated in the 2019 judgment to be the amount Daggs owed the trustee.

¶ 47     For this reason, we disagree with the district court's application of the doctrine of claim preclusion. Claim preclusion did not apply because the prior case and the interpleader action did not involve the identical subject matter or identical claims for relief. *See Foster*, ¶ 12, 394 P.3d at 1123.

¶ 48     But this disagreement does not mean that the district court reached the wrong result in granting the motion to dismiss.  We next consider whether, under the doctrine of issue preclusion, the issues decided in the 2019 judgment barred 335 Lake from litigating its cross-claims in the interpleader action.  *See City of Aurora v. Dep't of Revenue*, 2023 COA 17, ¶ 11, 529 P.3d 1254, 1256 (explaining that an appellate court may "affirm on any ground supported by the record" (quoting *McLellan v. Colo. Dep't of Hum. Servs.*, 2022 COA 7, ¶ 10, 507 P.3d 1025, 1029)).  We therefore turn to the four elements that must be satisfied for issue preclusion to apply.

¶ 49     First, as the 2019 judgment and the prior appeal demonstrate, the prior case was decided on a final judgment on the merits.  *See Foster*, ¶ 13, 394 P.3d at 1123.

¶ 50     Second, the issues raised in 335 Lake's cross-claims in the interpleader action were identical to the issues actually adjudicated in the prior case.  *See id.*  In the prior case, the Daggs parties asserted claims (1) to quiet title in the property; (2) to obtain declaratory judgments that no amounts were due and owing under the modified note and that the modified note and deed of trust were

unenforceable; and (3) for an injunction against any foreclosure based on the modified note and deed of trust. As explained above, in the 2019 judgment, the district court resolved the Daggs parties' claims by finding, among other facts, that the modified note and the deed of trust were valid and enforceable; the deed of trust encumbered the property; the mortgage loan's "outstanding principal balance [was] $5,080,497.18, and the total amount due as of September 1, 2019, was $7,197,669.42"; and the trustee was "the bearer [of the modified note and was] entitled to payment."

¶ 51 In its cross-claims, the Daggs parties sought to relitigate the trustee's right to recover the unpaid balance of the mortgage loan in the context of the trustee's claim to a portion of the escrowed funds. *See id.*

¶ 52 Third, the Daggs parties had a full and fair opportunity in the prior case to litigate the issues that 335 Lake sought to reopen through its cross-claims in the interpleader action. *See id.* Indeed, the Daggs parties pursued the prior case for more than a decade, during which they had an ample opportunity to litigate whether the trustee was entitled to recover the unpaid mortgage loan balance from Daggs.

20

¶ 53   Fourth, the Daggs parties were parties to the prior case and the interpleader action.  *See id.*

¶ 54   We now turn to 335 Lake's two remaining arguments against the application of claim preclusion or issue preclusion to bar its cross-claims — (1) the trustee's claim to recover the unpaid balance of the mortgage loan was barred under the doctrine of claim preclusion because it was a compulsory counterclaim in the prior case that the trustee never asserted in that proceeding; and (2) the trustee's claim to recover a portion of the escrowed funds was time barred.

¶ 55   First, 335 Lake argues that the trustee had no legal right to any portion of the escrowed funds because its claim to recover such monies was a compulsory counterclaim in the prior case that the trustee never pleaded.  Thus, 335 Lake reasons, the doctrine of claim preclusion barred that claim, and only the Daggs parties had a valid claim to the escrowed funds.  We disagree.

¶ 56   335 Lake ignores the critical fact, discussed above, that, after it sold the property and agreed to place the sale proceeds in escrow, the trustee was no longer seeking to collect on the modified note but, rather, was attempting to recover its share of the escrowed

funds — as quantified in the 2019 judgment. Once the 2019 judgment became final, it supplanted any claim to collect on the modified note by specifying the unpaid balance of the mortgage loan and determined that Daggs owed such sum to the trustee. The escrow agreement then set forth the procedure for distributing the sale proceeds, consistent with the ruling in the 2019 judgment that Daggs owed the trustee $7,197,669.42, plus postjudgment interest.

¶ 57 The Daggs parties assumed the risk that they would face such a judgment when they chose to file a civil action to challenge the enforceability of the modified note and the deed of trust. By the time the escrow agent filed the interpleader action, Daggs had lost on the issues of whether he owed any monies to the trustee and, if so, how much.

¶ 58 Second, 335 Lake argues that the trustee's claim to recover a portion of the escrowed funds was time barred under the statute of limitations for actions to recover a debt. But 335 Lake focuses on the wrong statute of limitations. As explained above, in the interpleader action, the trustee asserted a claim for breach of the *escrow agreement,* not for breach of *the modified note.* The trustee alleged that 335 Lake breached the escrow agreement by objecting

to the trustee's disbursement request in April 2022. The trustee's claim for breach of the escrow agreement did not come into existence until 335 Lake submitted its objection on April 28, 2022.

¶ 59 The trustee asserts that the three-year limitation period for all contract actions found in section 13-80-101(1)(a), C.R.S. 2025, governed its claim for breach of the escrow agreement. That limitation period did not start running until April 2022 — less than six months before the trustee asserted the trustee's claims. 335 Lake does not argue to the contrary; it apparently concedes that the trustee's claims were not time barred if the trustee was not asserting a claim to enforce the modified note.

¶ 60 For these reasons, we hold that, under the doctrine of issue preclusion, the issues resolved against the Daggs parties in the 2019 judgment barred 335 Lake's cross-claims in the interpleader action, and the district court therefore properly dismissed them. *See Foster*, ¶ 13, 394 P.3d at 1123.

### B. The District Court Did Not Err by Entering the Summary Judgment Order

#### 1. Standard of Review

¶ 61    "We review an order granting a motion for summary judgment de novo." *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008)

#### 2. The Trustee Was Entitled to Summary Judgment in Its Favor

¶ 62    The Daggs parties contend that the district court's grant of the summary judgment motion was "based on the same errors in applying the law of claim preclusion and the [s]tatute of [l]imitations that the [court] had made in connection with its granting of the motion to dismiss." Indeed, the Daggs parties rest their challenge to the summary judgment order on the same arguments they present in support of their contention that the district court erred by entering the dismissal order. Those arguments fare no better in the context of the summary judgment order than in the context of the dismissal order.

¶ 63    Significantly, the Daggs parties do not assert any defenses to the trustee's claims other than to reassert that the 2019 judgment barred them. *See Foster*, ¶ 12, 394 P.3d at 1123.

¶ 64    Accordingly, we affirm the summary judgment order.

## C.    The District Court Acted Within Its Discretion by Denying the Discovery Motion

### 1.    Standard of Review

¶ 65    "We review a court's discovery ruling for an abuse of discretion." *Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*, 2019 COA 147, ¶ 23, 461 P.3d 606, 613. "We will not reverse a court's ruling unless its 'decision is manifestly arbitrary, unreasonable, or unfair, or [it] applies incorrect legal standards.'" *Id.* (quoting *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 347 (Colo. App. 2005)).

### 2.    The Preclusive Effect of the 2019 Judgment Compelled the Denial of 335 Lake's Request to Take Discovery

¶ 66    The Daggs parties contend that the district court abused its discretion by improperly relying on the dismissal order in entering the discovery order. Further, the Daggs parties argue that the discovery order was an "extraordinary ruling" that denied their requested discovery "regarding still-pending affirmative defenses." We disagree.

¶ 67    The Daggs parties sought to take discovery on issues that the district court resolved against them in the 2019 judgment, or that

25

were otherwise irrelevant to the claims in the interpleader action, such as

- the trustee's rationale for not asserting an affirmative claim to collect on the modified note in the prior action;

- the reasons why the trustee voluntarily dismissed the 2011 nonjudicial foreclosure proceeding and did not file any later nonjudicial foreclosure proceedings; and

- the circumstances of the trustee's acquisition of an interest in the modified note and the deed of trust.

¶ 68    As explained above, in the 2019 judgment, the district court resolved against the Daggs parties all issues concerning the trustee's right to enforce the modified note and the sum Daggs owed the trustee.  Furthermore, once 335 Lake sold the property, the sale proceeds were placed in escrow, and 335 Lake objected to the trustee's request for its share of the escrowed funds.  Thus, the remaining issues centered on whether 335 Lake had breached the escrow agreement.  As the division noted in the prior appeal, because the 2019 judgment resolved the issue of whether the trustee was the holder of the modified note, "any issues concerning how [the trustee] came to hold the [modified] note [were] irrelevant

26

to its ability to enforce the [modified] note and the related deed of trust." *335 Lake Ave.*, No. 20CA0101, slip op. at ¶ 48.

¶ 69 The Daggs parties' discovery requests in the interpleader action ignored the preclusive effect of the 2019 judgment, as well as the effect of the dismissal order. Those discovery requests were part of their relentless campaign — in the face of the doctrine of issue preclusion — to relitigate the trustee's right to recover the unpaid balance of the mortgage loan.

¶ 70 For these reasons, we affirm the discovery order.

### D. Attorney Fees

¶ 71 The trustee requests an award of its reasonable attorney fees under section 7(E) of the modified note and section 13-17-102(2), C.R.S. 2025. Because the trustee's claims arose from 335 Lake's breach of the escrow agreement and not from Daggs's failure to pay the modified note, the fee-shifting provision of the modified note does not apply to the trustee's fee request.

¶ 72 In addition, although section 8.6 of the escrow agreement contains a fee-shifting provision, the trustee did not request an award of attorney fees under that section, either in the trustee's claims, the summary judgment motion, or its opening brief. We will

27

not craft an argument for the trustee that the trustee itself did not assert. *See Gravina Siding & Windows Co. v. Gravina,* 2022 COA 50, ¶ 71, 516 P.3d 37, 50.

¶ 73 Lastly, although a close call, we decline to award attorney fees to the trustee under section 13-17-102(2). The trustee asserts that, "[i]n their nearly 14[-]year campaign of meritless litigation, the Daggs [p]arties have asserted claims and defenses that lack substantial justification, have interposed the same for purposes of delay or harassment, and have unnecessarily expanded these proceedings." Although the Daggs parties did not prevail in this appeal — or in any of the related cases — the trustee does not explain why their arguments lacked substantial justification. As the supreme court has reminded us, we award appellate fees only "in cases that are clear and unequivocal." *Glover v. Serratoga Falls LLC,* 2021 CO 77, ¶ 70, 498 P.3d 1106, 1122 (quoting *Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925, 935 (Colo. 1993)). Based on the briefing and the record, this case is not one of them.

¶ 74 Accordingly, we deny the trustee's request for attorney fees.

### III. Disposition

¶ 75 The judgment is affirmed.

28

JUDGE DUNN and JUDGE KUHN concur.